A05A0833. IN RE MOSES.
(615 SE2d 573)

PHIPPS, Judge.

Caris Moses, joined by her brother, Joseph Moses, petitioned the probate court to appoint herself as guardian of the person and property of their widowed mother, Wyomia Moses, on the basis of

physical incapacity.[1] Wyomia Moses's sister, Shirley Smith, intervened, asserting that she would be a better guardian of her sister's person and that their brother should be guardian of the property.[2] After a hearing, the court awarded guardianship of Wyomia Moses's person to Smith and guardianship of her property to the county guardian. Caris Moses appeals, arguing that the court erred by ignoring the statutory preference for awarding guardianship of person and property to an adult child of the ward. Finding no error, we affirm.

At the hearing, a neurologist testified that he had examined Wyomia Moses and concluded that she suffered from dementia and depression, was unable to handle her personal and business affairs, and needed a guardian of her person and property.

Caris Moses testified that her mother had been disabled in an automobile accident three years earlier and had not been able to work or drive since. According to Caris Moses, she and her brother began driving their mother on errands, taking her to doctors' appointments, and paying her bills; and Joseph Moses moved into his mother's house. About six months before the hearing, however, Wyomia Moses left her home and went to live with a caretaker who had been hired by Smith, a California resident. Caris and Joseph Moses both testified that their mother had told them that she wanted to return home. Caris Moses further testified that she was prepared to be her mother's guardian and planned to take her to day care programs organized for senior citizens.

Smith testified that Wyomia Moses had told her that she did not trust her children. According to Smith, Joseph Moses cursed at his mother, did not buy her adequate food, frequently left her alone, and failed to clean the house. Smith testified that since her sister had moved out of her home earlier that year, she (Smith) had visited her frequently and had arranged for her care. Smith further testified that, if she were granted guardianship, she would continue to care for her sister and would divide her time between Georgia and California.

Wyomia Moses testified that she was afraid of her children and had moved out of her home because she did not want to be around them. She explained that her son was rude to friends who visited her, had slapped her twice, and did not take care of her; and that her daughter rarely visited. She testified that she wanted her sister to be her guardian because "I know she's going to do the right thing for me."

---

[1] Petitioners first nominated Joseph Moses to be the guardian, but they later amended their petition to nominate Caris Moses instead.

[2] Smith initially denied that her sister was incapacitated and objected to the appointment of a guardian, but she later withdrew her objection.

She also testified that she was afraid that her daughter, if granted guardianship, would put her "in a home" and visit only rarely. Finally, she testified that she liked the caretaker her sister had hired, that she had no interest in attending senior day care programs, and that she was seeing a new doctor and taking different medication that made her feel better and improved her memory.

There was a dispute at the hearing over two properties that had belonged to Wyomia Moses. Caris Moses testified that, about a year before, her mother had signed quitclaim deeds granting the properties to her children. A handwriting analyst hired by Smith, however, testified that the signatures on the deeds were not those of Wyomia Moses. Wyomia Moses testified that she did not remember conveying the properties to her children, and that at least one of the signatures on the deeds was not hers.

The court found that although Wyomia Moses needed a guardian to manage her property and make medical decisions for her, she "is aware of her circumstances, can enthusiastically express opinions about her living arrangements and social preferences, and should be allowed to make certain decisions for herself." Thus, the court concluded that Wyomia Moses had "the capacity to determine, among other things, who she would like to reside with and where she should reside." Because Wyomia Moses had expressed a clear preference for her sister to be her guardian, and because she "ha[d] sufficient capacity to determine and express such a preference," the court appointed Smith as "limited guardian" for the purpose of providing her sister's medical care and making medical decisions.

The court appointed the county guardian to be the guardian of Wyomia Moses's property "because it is in the best interest of the ward to have a neutral, professional guardian serve." In light of the dispute over the authenticity of the deeds transferring properties to Wyomia Moses's children, the court found that Caris Moses had a conflict of interest and was not in a position to investigate the transfers on behalf of her mother. Finally, the court noted that Wyomia Moses had testified that she did not want her daughter to be the guardian of her property.

OCGA § 29-5-2 sets forth preferences for the probate court to consider in appointing a guardian for an incapacitated adult. Although an adult child has preference over a sister,[3] "for good cause shown . . . the court may pass over a person having a preference and appoint a person having a lower preference or no preference . . . if the court finds such person . . . to be substantially more qualified and such

---

[3] OCGA § 29-5-2 (c).

appointment to be clearly in the best interests of the ward."[4] In deciding whether to depart from the statutory preferences, the court "shall consider all relevant factors, including the ability of the person to perform the duties of a guardian under this chapter. . . ."[5] We review the court's decision for abuse of discretion.[6]

1. Caris Moses argues that the court erred by appointing the county guardian, rather than her, as guardian of her mother's property. Caris Moses contends that the controversy surrounding the purportedly forged quitclaim deeds merely created a *potential* conflict of interest, which cannot justify departure from the statutory preferences. But we agree with the probate court that the conflict was actual, not potential; and we find no abuse of discretion in the court's conclusion that the neutral county guardian would better serve Wyomia Moses's interests.[7]

2. Caris Moses contends that the court should not have considered her mother's preference for Smith in selecting a guardian for her mother's person. Because Wyomia Moses was incompetent, Caris Moses urges, she was incapable of choosing her own guardian. Again, we disagree. First, the court specifically found that Wyomia Moses *was* competent to make certain decisions, including expressing a preference for her guardian, and the evidence supports that finding. Second, Wyomia Moses's preference for Smith was not the sole basis for the court's decision. The court also found that Smith was willing and able to care for her sister, and that finding, too, is supported by the record. Accordingly, the court did not abuse its discretion in appointing Smith as guardian of Wyomia Moses's person.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED JUNE 2, 2005.

*Lawson & Thornton, Charles S. Thornton*, for appellants.
*Audrey Arrington-Hawkins*, for appellee.

---

[4] OCGA § 29-5-2 (b).

[5] Id.

[6] *In re Estate of Taylor*, 270 Ga. App. 807 (608 SE2d 299) (2004).

[7] See *In re Holloway*, 251 Ga. App. 892, 894-895 (555 SE2d 228) (2001) (evidence supported court's finding that good cause had been shown for not appointing any of ward's adult children as her guardian).