## A07A1725. CRUVER et al. v. MITCHELL.
(656 SE2d 269)

SMITH, Presiding Judge.

Ellen Jean Cruver and Mallory Thomas Mitchell ("appellants") petitioned to be appointed guardians and/or conservators for their mother, Addie Bee Mitchell ("Mitchell"). The probate court found Mitchell in need of a conservator, but appointed the Fulton County Conservator, rather than appellants, to serve in that capacity. It also denied appellants' request for guardianship. On appeal, appellants challenge the sufficiency of the evidence supporting the probate court's ruling, as well as several specific findings and conclusions made by the court. For reasons that follow, we affirm in part and reverse in part.

Through their petition, appellants alleged that their 91-year-old mother was suffering from end-stage Alzheimer's disease, rendering her incapable of making personal health, safety, and financial decisions. A court-ordered evaluation by an appointed social worker confirmed the Alzheimer's diagnosis and found Mitchell to be confused, disoriented, unable to speak intelligently, and incapacitated by her disease.

The probate court subsequently held a hearing on the petition. Cruver testified that Mitchell had been living in a nursing home since 2002 and was no longer able to make decisions for herself. Appellants, who had joint control over their mother's bank accounts, had successfully handled her finances to that point. But Mitchell owned certain real property individually, and appellants believed that they needed to sell part of that property to meet her future financial needs.

Medicaid had paid many of Mitchell's expenses until shortly before the hearing. Appellants, however, had decided to stop her benefits and "just pay for [the expenses] out of pocket," using money from Mitchell's bank accounts. Appellants explained that they removed their mother from the Medicaid program so that the State would not seek recovery of her Medicaid expenses by taking possession of her real property.

Appellants apparently feared that, once Mitchell died, the State would make a claim against her estate to recover the Medicaid payments pursuant to OCGA § 49-4-147.1 (a), which establishes an estate recovery program. The program became effective in May 2006, and the statutory framework permits recovery of medical assistance payments made on or after May 3, 2006. See OCGA § 49-4-147.1 (b). Seeking to avoid such a recovery, appellants opted Mitchell out of Medicaid before the program's effective date. They planned to sell some of Mitchell's property to a relative to generate income for Mitchell, while keeping the property "in the family."

At the hearing, the probate court and Mitchell's court-appointed lawyer expressed concern about appellants' opt-out decision, questioning whether the decision served Mitchell's best interest and whether, without the guaranteed Medicaid payments, Mitchell would have enough money to meet her needs. Mitchell's lawyer also queried whether appellants recognized the various tax consequences of their decision.

The probate court determined that Mitchell's mental and physical disabilities required that a conservator be appointed to manage her property and financial affairs. The court refused, however, to appoint appellants as conservators, finding instead that Mitchell's interests would best be served by appointment of the county conservator, a professional who could fully analyze the issues associated with a Medicaid opt-out. The probate court also found insufficient evidence to support appointment of a guardian to make decisions regarding Mitchell's health and safety.

1. *The Conservatorship.*

(a) Under OCGA § 29-5-1 (a), the probate court "may appoint a conservator for an adult only if the court finds the adult lacks sufficient capacity to make or communicate significant responsible decisions concerning the management of his or her property." The probate court made such a determination here, and appellants do not challenge this finding. They contend, however, that as adult children of Mitchell, they should have been appointed conservators according to the statutory order of preference established by OCGA § 29-5-3 (b).

It is true that an individual's adult children have preference over the county conservator in the statutory list of qualified conservators. See OCGA § 29-5-3 (b) (3), (8). But although the probate court must consider the statutory order of preferences, it is ultimately required to "appoint as conservator that person who shall best serve the interest[s] of the [individual]." OCGA § 29-5-3 (a). In meeting this requirement, the court may disregard the preference order. See id.; *In re Moses*, 273 Ga. App. 501, 503-504 (615 SE2d 573) (2005) (decided under former OCGA § 29-5-2). Absent an abuse of discretion, we will not reverse the trial court's determination as to who will serve an individual's best interests as conservator. See id.

We find no abuse here. The evidence showed that appellants opted Mitchell out of Medicaid benefits in order to avoid the estate recovery program. They planned to sell Mitchell's property to a family member to generate income for her, but presented no testimony or other evidence that, from a financial and tax perspective, showed such a decision was wise or that Mitchell would have sufficient future funds without the Medicaid payments. Moreover, the probate court found that, as heirs-apparent of Mitchell's estate, appellants, who

admittedly sought to protect their mother's property from the recovery program, had a conflict of interest in the matter. Under these circumstances, the probate court properly exercised its discretion in concluding that the appointment of a neutral, professional conservator would best serve Mitchell's interests. See *In re Moses*, supra, 273 Ga. App. at 504 (1).

(b) In addition to generally challenging the sufficiency of the evidence supporting the conservatorship appointment, appellants question several of the probate court's specific factual findings and conclusions drawn from those findings. We will not set aside the probate court's findings unless they are clearly erroneous. See *Tanksley v. Parker*, 278 Ga. 877 (1) (608 SE2d 596) (2005). And where such findings are supported by any evidence, they will be upheld on appeal. See *Glaze v. Lemaster*, 279 Ga. 361, 362 (2) (613 SE2d 617) (2005).

Each of the findings and conclusions cited by appellants is supported by at least *some* evidence, including those to the effect that appellants sought to preserve Mitchell's estate, put their interests above those of Mitchell, and had a conflict of interest. The probate court was also authorized to question Cruver's credibility based on her conflicting testimony regarding one of Mitchell's bank accounts. Although appellants disclosed the account on the guardianship/conservatorship petition, they did not list a value for it, and Cruver initially did not identify the account during her testimony at the probate hearing.

On appeal, we must defer to the probate court's credibility determinations. See *Tanksley*, supra, 278 Ga. at 877-878 (1); *Sharp v. Varner*, 226 Ga. App. 570, 571 (2) (486 SE2d 701) (1997). Given the evidence presented, we find no reversible error in the probate court's factual findings and conclusions.

(c) Appellants also claim that the probate court's order failed to set forth any conclusions of law supporting its decision. A review of the order, however, reveals clearly designated conclusions of law.

2. *The Guardianship.* Appellants argue that the probate court erred in failing to appoint a guardian to make decisions regarding Mitchell's health and safety. The social worker who evaluated Mitchell concluded that she lacked the capacity to make such decisions, and the probate court determined that her mental and physical disability left her unable to manage her financial affairs. Nevertheless, the probate court found insufficient evidence to support appointment of a guardian.

Although the probate court's order does not detail the factual basis for this ruling, the judge stated at the hearing:

I don't see the need for the appointment of a guardian. Y'all have been able to handle your mother's medical affairs and

her placement decisions without having qualified as guardian up to this point, and I've not heard any evidence that changes [that].

Rather than considering the merits of the guardianship petition, the probate court determined that since appellants had taken care of their mother's health and safety affairs thus far without a formal guardianship, no guardianship was needed. Under Georgia law, however, a guardian may be appointed for an adult "if the court finds the adult lacks sufficient capacity to make or communicate significant responsible decisions concerning his or her health or safety." OCGA § 29-4-1 (a). The inquiry focuses on the condition and best interest of the adult, not on whether the adult's family to date has been able to act successfully on her behalf without a guardianship. See OCGA § 29-4-1 (a), (c).

Because the probate court applied an incorrect analysis in reviewing appellants' request for guardianship, it abused its discretion in denying the request. See *In re Estate of Taylor*, 270 Ga. App. 807, 809 (608 SE2d 299) (2004) (probate court abused its discretion in failing to properly consider statutory preferences in choosing a guardian). We therefore reverse the denial of the petition for guardianship and remand this case for further consideration of whether a guardian should be appointed for Mitchell. See id.

*Judgment affirmed in part and reversed in part, and case remanded. Barnes, C. J., and Miller, J., concur.*

DECIDED JANUARY 9, 2008.

*Simmons & Simmons, Annie R. Simmons*, for appellants.
*Russell & Herrera, Ann J. Herrera, Bertram S. Boley, Jr.*, for appellee.