A09A0923. IN RE CASH.

(679 SE2d 124)

BLACKBURN, Presiding Judge.

Louise Altobellis Cash appeals from an order of the probate court granting her sons' petition for guardianship of her person and conservatorship of her property, asserting that there was insufficient evidence to support the petition. We disagree and affirm.

In reviewing an order on a petition for conservatorship or guardianship, "[w]e will not set aside the probate court's findings unless they are clearly erroneous. And where such findings are supported by any evidence, they will be upheld on appeal." (Citation omitted.) *Cruver v. Mitchell*.[1]

The record shows that Mrs. Cash is currently 94 years old and resides at a Sunrise Assisted Living Facility ("Sunrise"). In July 2008, two of her sons, Julian A. Cash and Thomas V. Cash, filed a petition in the Probate Court of Fulton County seeking guardianship of Mrs. Cash's person and conservatorship of her property. The petition alleged that Mrs. Cash was incapacitated due to lack of memory and could not make or communicate significant, responsible decisions regarding her health, safety, or the management of her property. In support of these assertions, the petition alleged that Mrs. Cash was currently immobile, was refusing to move to a floor of the assisted-living facility that would afford her 24-hour assistance and supervision, and was refusing to pay bills she incurred for private nursing care.

After reviewing the petition, the probate court entered an order requiring Mrs. Cash to submit to a competency evaluation by a licensed clinical social worker. The clinical social worker's written evaluation, filed with the probate court, concluded that Mrs. Cash was incapacitated and therefore in need of both a guardian and a conservator. Based on that evaluation and the pleadings, the probate court found probable cause to support the petition and scheduled a hearing on the same.

Only two witnesses testified at the hearing on the petition.

---

[1] *Cruver v. Mitchell*, 289 Ga. App. 145, 147 (1) (b) (656 SE2d 269) (2008).

Julian Cash testified that in January 2008, he began receiving calls from his mother's creditors regarding her failure to pay certain bills, including those for private care his mother had received. Mr. Cash spoke with the then-executive director at Sunrise, who confirmed his mother's refusal to pay bills and also informed him of some other behavioral issues regarding Mrs. Cash. Several months later, Mr. Cash received a copy of an eviction notice Sunrise had sent to his mother. He again spoke with Sunrise's executive director, who discussed with him the behavioral incidents and other issues that led to the planned eviction. Mr. Cash testified that when his mother entered Sunrise six years earlier, she was able to walk, but that she was now confined to a wheelchair. Because of her physical condition, his mother had hired a number of sitters to stay with her during the overnight hours (approximately 11:00 p.m. until 7:00 a.m.), but she had fired most of them and "she's gotten to the point where it's hard to get a sitter to stay with her all night." Accordingly, Sunrise had asked his mother to move to a different floor of the facility, which would provide nursing care 24 hours a day. Mrs. Cash, however, was refusing to make that move. Finally, Mr. Cash testified that his mother owned two furnished residences, worth a significant amount of money, but that she had failed to insure either of the structures.

Mrs. Cash presented the testimony of a psychiatrist whom she had retained to evaluate her competency. The psychiatrist testified that he had met with Mrs. Cash at his office for approximately 75 minutes and that based on their conversation and his observations he believed that Mrs. Cash showed no signs of mental illness and was capable of making sound judgments.

After considering the hearing testimony and the information contained in the court-ordered evaluation of Mrs. Cash, the probate court granted the petition, finding that Mrs. Cash was in need of a conservator and guardian because she lacked the capacity to make or communicate significant responsible decisions about her health or safety or about the management of her property. See OCGA §§ 29-4-1 (a); 29-5-1 (a). In support of this decision, the probate court found that Mrs. Cash was no longer ambulatory and could not care for herself, but had terminated private caregivers hired to assist her at her current Sunrise residence and had refused to move to a floor of the facility that could provide her with 24-hour assistance. Additionally, despite the fact that Mrs. Cash had substantial assets, she was refusing to pay her bills. And, given that her current monthly expenses exceeded her monthly income, those assets needed to be managed so as to provide for Mrs. Cash's continued needs.

On appeal, Mrs. Cash first argues that the probate court's order must be reversed because its factual findings relied on the hearsay testimony of Julian Cash regarding his mother's behavioral prob-

lems at Sunrise. To the extent inadmissible hearsay testimony was presented, we presume that the probate court judge sifted the wheat from the chaff and relied only upon proper evidence in making its findings. See *Morris v. Morris*.[2] Proper evidence included Mr. Cash's testimony as to his personal knowledge regarding his mother's physical problems, regarding her refusal to either relocate within Sunrise or to hire a private caregiver, and regarding her failure to pay her bills. More importantly, proper evidence included the findings contained in the written, court-ordered evaluation of Mrs. Cash. See OCGA §§ 29-4-12 (d) (4); 29-5-12 (d) (4) ("[i]n addition to the evidence at the hearing, the court may consider the evaluation report and any response filed by the proposed ward"). That evaluation detailed some of Mrs. Cash's erratic behavior at Sunrise, as well as her refusal to either move to the fourth floor at Sunrise or to hire a private caregiver, her repeated firings of private caregivers hired to assist her, and her refusal to pay her bills, including bills for the private nursing services she did receive. The evidence, therefore, was sufficient to support the probate court's factual findings. See *Cruver*, supra, 289 Ga. App. at 147 (1) (b) (no reversible error where the probate court's findings are supported by at least some evidence).

Mrs. Cash further argues that the probate court erred in finding her incapacitated because the testimony of her psychiatrist on this issue outweighed the conclusions of the licensed clinical social worker who performed the court-ordered evaluation. The probate court's order, however, specifically considered the psychiatrist's testimony, noting that the psychiatrist had spent less than two hours with Mrs. Cash and that "[h]e did not have the opportunity to observe her in her everyday environment, and through the course of the day." Thus, the probate court concluded that the psychiatrist's testimony did not outweigh the other evidence showing that Mrs. Cash was in need of a guardian and conservator. As an appellate court, we are not at liberty to evaluate either the weight afforded the evidence below or the trial court's credibility determinations. *Page v. State*.[3] "[R]ather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met." (Punctuation omitted.) *In the Interest of A. R. A. S.*[4]

Here, the record contains evidence which supports the probate court's findings of fact, and those findings, in turn, support the legal conclusion that Mrs. Cash was in need of a guardian and a conser-

[2] *Morris v. Morris*, 282 Ga. App. 127, 133 (6) (637 SE2d 838) (2006).
[3] *Page v. State*, 296 Ga. App. 431, 433 (1) (a) (674 SE2d 654) (2009).
[4] *In the Interest of A. R. A. S.*, 278 Ga. App. 608, 610-611 (2) (629 SE2d 822) (2006).

vator. See *Epperson v. Epperson*[5] (affirming appointment of conservator and guardian in light of proposed ward's advanced age, physical disability, and apparent lack of understanding of the steps that needed to be taken to ensure his proper care); *Cummings v. Stanford*[6] (appointment of conservator proper where assets could dissipate in absence of proper management and where proposed ward, because of advanced age and/or mental disability, could not manage the same). Accordingly, we affirm the order of the probate court.

*Judgment affirmed. Adams and Doyle, JJ., concur.*

DECIDED MAY 22, 2009.

*Duncan H. Adams*, for appellant.
Julian A. Cash, *pro se.*
Thomas V. Cash, *pro se.*
Arthur Cash, *pro se.*

---

[5] *Epperson v. Epperson*, 212 Ga. App. 420, 421-422 (442 SE2d 12) (1994).
[6] *Cummings v. Stanford*, 193 Ga. App. 695, 696 (1) (388 SE2d 729) (1989).
[1] *Hughes v. State*, 297 Ga. App. 581 (677 SE2d 674) (2009).