## A11A1633. In re COCHRAN.

(723 SE2d 490)

BLACKWELL, Judge.

The Department of Human Services filed a petition for the appointment of a conservator to manage the property and financial affairs of Sara Cochran, then 79 years of age. Following an evidentiary hearing, the probate court granted the petition, and Cochran now appeals. Cochran contends that the evidence in the record is insufficient to sustain the judgment below, that the probate court should have dismissed the petition for failure to state a claim and want of probable cause, and that the affidavit that accompanied the petition was inadequate. We find no error and affirm.

The evidence shows that, beginning in 2007, the Department began to receive reports that Cochran was a victim of financial exploitation. It opened an investigation, and a case worker met with and interviewed Cochran. The investigation revealed that Cochran had spent at least $100,000 on various lotteries and sweepstakes, including foreign lotteries,[1] and Cochran eventually acknowledged to the case worker that she might have been "scammed" in connection with some of these lotteries. After the Department contacted her family, however, it closed its investigation, apparently to give her family an opportunity to deal with the problem.

Some of Cochran's family later filed, and the probate court granted, an emergency petition for the appointment of a conservator to manage her property. The probate court appointed Althea Caces as an emergency conservator. Ms. Caces discovered "multiple transactions [in which Cochran and her husband had] repeatedly made the same mistake and fraudulently been induced to send out money," and she determined that $140,000 had been disbursed by Cochran and her husband under suspicious circumstances in the preceding year. Ms. Caces expressed concern that, if Cochran and her husband continued spending money on lotteries and sweepstakes at the same rate, their estate would "be exhausted within a couple of years."

The emergency conservatorship eventually expired, however, and as soon as it did, Cochran and her husband went to their bank, where Cochran asked to wire $52,000 from her account. In connection with this request, Cochran showed a handwritten letter to her banker, in which someone, who claimed to be the president of SunTrust Bank, congratulated Cochran for having won a multi-million-dollar lottery and informed her that she would owe $52,000 in taxes on her winnings. Upon examining the letter, the banker told

---

[1] Cochran later testified that, in fact, she had spent as much as $600,000 or $700,000 on these lotteries over a period of six or seven years.

Cochran that it was fraudulent and that it was not, in fact, from the president of SunTrust. The banker refused to authorize the wire, so Cochran then went to another branch and withdrew $52,000.

The banker later testified, and his testimony shows, that the request to wire $52,000 was not an isolated incident. According to the banker, Cochran would "bring in the paperwork[,] and we could see that they were these lottery scams[,] and we would try to talk her out of wiring money." The banker also explained that Cochran previously had attempted to deposit bogus checks, made payable to her and drawn upon the account of "Sweet Steaks Company of Australia," for $18.9 million and $5.3 million, which the bank refused to deposit.

After Cochran withdrew $52,000, her bank apparently reported to the Department that Cochran had been financially exploited. A case manager again visited Cochran and her husband to investigate the claim. During this visit, the telephone at the Cochran home rang several times, and Cochran explained that the callers were calling to ask her to send money to them. Cochran told the case manager that sometimes she and her husband sent money to people in Spain and someone in Canada. The case manager explained to Cochran that sending large amounts of money to people that she did not know was risky. At the suggestion of the case manager, Cochran and her husband both agreed to an interview with Dr. Gary Rogers, a psychologist.

After Dr. Rogers interviewed Cochran, he formed the opinion that she lacks sufficient capacity to make responsible decisions concerning the management of her property. The Department sub-sequently filed a petition for the appointment of a conservator, supported by the affidavit of Dr. Rogers.[2] The probate court ordered an evaluation of Cochran by Nhien Dutkin, a licensed clinical social worker. Ms. Dutkin also came to the conclusion that Cochran lacks sufficient capacity to make responsible decisions concerning the management of her property. Following a hearing, the probate court entered a judgment appointing a conservator for Cochran, and the court denied her motion to strike the affidavit of Dr. Rogers, denied her motion to dismiss the petition for failure to state a claim and for lack of probable cause, and denied her motion to dismiss the petition for failure to establish the need for a conservator.[3] Cochran now appeals.

---

[2] The Department also filed a petition for the appointment of an emergency conservator, which the court granted as an interim safeguard, putting the property of Cochran under a second emergency conservatorship.

[3] The Department also sought a conservator for the property of her husband, but the probate court dismissed the petition as to the husband after the presentation of evidence.

1. Cochran claims that the evidence does not sustain the judgment of the probate court that a conservatorship was warranted. We disagree. "The court may appoint a conservator for an adult only if the court finds the adult lacks sufficient capacity to make or communicate significant responsible decisions concerning the management of . . . property." OCGA § 29-5-1 (a). See also *Cruver v. Mitchell*, 289 Ga. App. 145, 146 (1) (a) (656 SE2d 269) (2008). The need for a conservatorship must be established by clear and convincing evidence. OCGA § 29-5-12 (d) (4). On appeal, we must uphold the findings of a probate court on a petition for conservatorship if they are supported by any clear and convincing evidence. See id.; *Cruver*, 289 Ga. App. at 147 (1) (b).

Evidence that Cochran spent large sums of money on foreign lotteries does not, she says, prove clearly and convincingly that she needs a conservator to manage her property. We agree that, if the evidence showed only that Cochran had played these lotteries, it would be insufficient to authorize the appointment of a conservator, inasmuch as a person of perfectly sound mind, capable of understanding that the lotteries might be a fraud, nevertheless might choose to play the lotteries as escapist fantasy and fun.[4] But the evidence in this case, we think, shows more. For the appointment of a conservator, the Department was required to prove that Cochran lacks "sufficient capacity to make or communicate significant responsible decisions" concerning the management of her property and financial affairs. See OCGA § 29-5-1 (a). We think the Department carried its burden.

The probate court found that Cochran suffers from "cognitive loss" that affects her judgment with respect to her financial affairs, and the court found that her impaired judgment led her to incur significant financial losses as she repeatedly fell victim to fraud. That Cochran is a serial victim of fraudulent lottery schemes is established by compelling evidence. But more important, the evidence also shows, consistent with the findings of the probate court, an impairment of her capacity to make decisions about her finances. Dr. Rogers testified that Cochran is unable to understand the consequences of her financial decisions and, when he interviewed her, was "unable to articulate [any] facts" to support her belief that she had won a lottery. Dr. Rogers explained that, when he asked Cochran whether she wanted to find a way to verify that someone calling her about a lottery

---

[4] As a respected authority on the law of conservatorships has explained, "[w]hile it is tempting to gauge whether a decision is 'responsible' through the lens of one's own value structure, it is vital that those involved in adult conservatorships isolate the actual decision-making process from the decision made." Mary F. Radford, *Guardianships and Conservatorships in Georgia*, § 5-1, p. 239 (1st Ed. 2005) (footnote omitted).

was not carrying on a scam, Cochran responded that "[i]t's not a scam. He called." In addition, Ms. Dutkin testified and expressed her concern that Cochran was unable to remember important details about significant financial matters. For instance, Cochran and her husband had given their bank account number to persons who represented that the Cochrans had won more than $57 million in a lottery, but according to Ms. Dutkin, Cochran and her husband could not recall the names of the persons who made these representations or identify the lottery they purportedly had won. And following the court-ordered evaluation of Cochran, Ms. Dutkin concluded that Cochran's ability to make responsible decisions regarding her finances is substantially impaired.

Cochran herself also testified at the hearing, and in parts of her testimony, she arguably displayed a sound grasp of her financial affairs. On the other hand, she testified that a man from Jamaica was in town and had asked her to "call him as soon as we got home from court." According to Cochran, this man was supposed to bring her a check for $57 million, as well as two cars. When asked if she thought the man was truthful, Cochran responded that, "well, you [can] never tell."

Given this evidence, the probate court was authorized to find that Cochran repeatedly had fallen victim to fraud because her judgment was impaired by cognitive loss. Accordingly, the evidence was sufficient for the probate court to find by clear and convincing evidence that Cochran is in need of a conservator to protect her assets. See *In re Cash*, 298 Ga. App. 110, 112-113 (679 SE2d 124) (2009) (evidence was sufficient to support probate court's factual findings which, in turn, supported the legal conclusion that appellant was in need of a conservator). It follows that the probate court did not err when it granted the petition for the appointment of a conservator. See, e.g., *Cummings v. Stanford*, 193 Ga. App. 695, 696 (1) (388 SE2d 729) (1989) (where evidence supported probate court's finding that "the appellant was incapable of managing her financial resources, which would be wasted or dissipated in the absence of proper management," probate court did not err in appointing guardian of appellant's property).

2. Cochran also claims that the trial court erred when it denied her motions to dismiss the petition for lack of probable cause and failure to state a claim and to strike the affidavit of Dr. Rogers. We have previously held that "a probate court's pre-trial decision finding probable cause under OCGA § 29-5-12 (c) and ordering a conservatorship action to proceed to trial is not reviewable on appeal once the trial has occurred in which (as here) the evidence supported an order of conservatorship." *Yetman v. Walsh*, 282 Ga. App. 499, 501

(2) (639 SE2d 491) (2006).[5] Given our conclusion that the evidence is sufficient to sustain the order of conservatorship, we will not separately consider whether the trial court properly found probable cause to proceed with an evaluation and then conduct a hearing for purposes of OCGA §§ 29-5-11 and 29-5-12.

Cochran also sought to strike the affidavit of Dr. Rogers. Under OCGA § 29-5-10 (c) (1), a petition for the appointment of a conservator must be accompanied by an affidavit of a licensed psychologist, physician, or clinical social worker in support of the petition. In this case, the petition was accompanied only by the supporting affidavit of Dr. Rogers. Thus, Cochran argues, if the affidavit of Dr. Rogers had been stricken, the petition itself would not satisfy the statutory requirements for a valid claim for the appointment of a conservator.

Cochran first contends that the affidavit is facially improper because, she says, it is conclusory, lacks the supporting factual statement required by statute, and fails to specify any identifiable condition or diagnosis. A review of the affidavit shows that this contention is without merit. The requirements for an affidavit in support of a petition for the appointment of a conservator are set forth in OCGA § 29-5-10 (c), which provides that the affidavit must, among other things, "stat[e] the facts that support the claim of the need for a conservator." OCGA § 29-5-10 (c) (3). According to the affidavit of Dr. Rogers, Cochran suffers from a "loss of cognitive process of judgment and consequences." The affidavit also includes the specific determination, required by OCGA § 29-5-10 (c) (2), that Cochran lacks sufficient capacity to make or communicate significant, responsible decisions concerning the management of her property. In support of this determination, the affidavit goes on to say, among other things, that Cochran, "when asked the process to verify winnings from a lottery . . . is unable to articulate the facts for such verification" and, when she is given examples, "is not able to process the actual cause and effect." We find that this affidavit satisfies the requirements of OCGA § 29-5-10 (c).

---

[5] After the filing of the petition, "the court shall review the petition and the affidavit, if any, and determine whether there is probable cause to believe that the proposed ward is in need of a conservator within the meaning of Code Section 29-5-1." OCGA § 29-5-11 (a). If so, the court is directed to appoint a physician, psychologist, or licensed clinical social worker to evaluate the proposed ward. OCGA § 29-5-11 (d). After reviewing the evaluation, if the court again finds probable cause to support a finding that the proposed ward is in need of a conservator, the court is required to schedule a hearing on the petition. See OCGA § 29-5-12 (a), (c). Here, the probate court, upon review of the petition, issued an order directing that Cochran be evaluated by Ms. Dutkin, and upon its review of the petition and the evaluation, the probate court set a hearing on the petition. Although Cochran suggests that the probate court erred in finding probable cause in its determination under OCGA § 29-5-11, we find no reason to distinguish, for purposes of applying the *Yetman* rule, a finding of probable cause under OCGA § 29-5-11 from a finding of probable cause under OCGA § 29-5-12.

Cochran also challenges the affidavit on the ground that it was obtained by the State, she says, without statutory authority and in violation of her constitutional rights to privacy and to be free from unreasonable searches and seizures. We find that these contentions also have no merit. The evidence shows that the case manager suggested to Cochran that she be evaluated by her own physician because Cochran was sending thousands of dollars to people that she did not know. Cochran refused to be evaluated by her physician because she was embarrassed, but she agreed to talk with Dr. Rogers. According to the case manager, Dr. Rogers explained to Cochran that his evaluation of her might be used to support a petition for conservatorship. Because Cochran consented to talk with Dr. Rogers, the probate court could conclude that the State did not intrude on her "fundamental constitutional right to 'be let alone,' " *In re J. M.*, 276 Ga. 88, 89 (1) (575 SE2d 441) (2003) (footnote omitted), and that she was not subjected to an unreasonable search. See generally *Clemow v. State*, 196 Ga. App. 533 (1) (396 SE2d 302) (1990) (evidence supported trial court's conclusion that appellant voluntarily consented to the search). Finally, although Cochran did not agree to the appointment of a conservator, the Department nevertheless was authorized to petition for it. See OCGA § 30-5-5 (e). Because the Department was authorized to petition for a conservatorship, and inasmuch as OCGA § 29-5-10 (c) contemplates that such a petition be supported by the affidavit of a professional, such as a licensed psychologist, we cannot agree that the Department acted without any authority when it obtained an affidavit from Dr. Rogers. We conclude, therefore, that the probate court did not err when it denied the motion to dismiss the petition and the motion to strike the affidavit.

For these reasons, we affirm the judgment below.

*Judgment affirmed. Barnes, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 17, 2012.

*Jerry A. Landers, Jr.*, for appellant.

*Samuel S. Olens, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Elizabeth M. Williamson, Assistant Attorney General, Edwards, Friedewald & Grayson, Christopher M. Bethel, Althea C. Caces*, for appellee.