**FIRST DIVISION**
**BARNES, P. J.,**
**Land, J., and Senior Appellate Judge Phipps**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 8, 2023**

# In the Court of Appeals of Georgia

A23A0399. IN RE: ESTATE OF BETTE DWOSKIN KURTZMAN.

BARNES, Presiding Judge.

This appeal arises from a dispute over who should be appointed as the guardian and conservator of Bette Dwoskin Kurtzman, an adult suffering from dementia. Following an evidentiary hearing, the probate court entered a final order appointing Kurtzman's daughter as the guardian of her person and the Fulton County Conservator as the conservator of her property. Kurtzman appeals from that order, contending that the probate court erred by failing to rule on the validity of certain estate planning documents in which she nominated her son to serve as her guardian and conservator, and by disregarding her son for those roles because he did not file a written request for appointment or responsive pleadings in the probate court proceedings. Because the probate court applied an incorrect analysis in determining

who should serve as Kurtzman's guardian and conservator, we reverse the probate court's order and remand for further action consistent with this opinion.

The record reflects that in December 2020, Amy Kurtzman Jampol (Kurtzman's daughter) and Myron Dwoskin (Kurtzman's brother) filed a petition for the appointment of a guardian and conservator for Kurtzman in the Probate Court of Fulton County (collectively, the "Petitioners"). In their petition, as amended, the Petitioners alleged that Kurtzman – who was 85-years old, recently widowed, and living in an assisted living facility – needed a guardian to manage her health care and a conservator to manage her finances because she was incapacitated as the result of dementia and other health issues. The Petitioners sought to have Amy[1] appointed as Kurtzman's guardian and the Fulton County Conservator appointed as her conservator, asserting that their appointments would be in Kurtzman's best interests.

The Petitioners acknowledged in their Petition that earlier in 2020, Kurtzman executed several estate planning documents, including a Georgia advance directive for health care in which she named her son, Richard Kurtzman, to serve as her health care agent and nominated him to serve as her guardian in the event that a court

---

[1] For purposes of clarity, we will refer to Kurtzman's family members by their first names.

decided that a guardianship was necessary, and a "statutory form power of attorney" appointing Richard as her financial agent and nominating him to serve as her conservator in the event a court decided that a conservatorship was necessary (collectively, the "Estate Planning Documents"). However, the Petitioners alleged that the Estate Planning Documents were invalid due to Kurtzman's incapacity from dementia at the time of their execution and to Richard's undue influence on his mother. The Petitioners further alleged that to the extent that the Estate Planning Documents were valid, there was good cause to disregard the nomination of Richard as Kurtzman's guardian and conservator because "his prior actions demonstrate[d] that he [was] not concerned with her well-being, only with preserving what he consider[ed] to be 'his inheritance.'"

Kurtzman filed a response in opposition to the petition, contending that appointment of a guardian and conservator was unnecessary in light of Richard's appointment as agent of her health care and finances in the Estate Planning Documents, which Kurtzman alleged had been validly executed. According to Kurtzman, "her health, safety and property [were] all being well taken care of by her son." Alternatively, Kurtzman asserted that if the appointment of a guardian and conservator was deemed necessary by the probate court, the court should honor her

3

nomination of Richard as her guardian and conservator in the Estate Planning Documents and appoint him to those positions. Richard did not seek to intervene or otherwise file any pleadings or motions in the probate court proceedings.

Following a two-day evidentiary hearing,[2] the probate court[3] entered its final order granting the Petitioners' petition for appointment of a guardian and conservator. In the "Findings of Fact" section of its order, the probate court found that Kurtzman was an incapacitated adult who could not care for herself as the result of dementia. The probate court also summarized the conflicting evidence (including the conflicting testimony of Amy, Myron, and Richard) regarding whether Kurtzman was receiving proper care at the assisted living facility that Richard chose for her and regarding who should be appointed as her guardian and conservator. Additionally, the probate court

---

[2] The hearing was conducted by video conference through Zoom.

[3] The probate court judge appointed a hearing officer to hear this matter and exercise the jurisdiction of the court. See OCGA § 29-4-12 (d) (7) ("In any procedure under [the guardianship] chapter in which the judge of the court is unable to hear a case within the time required for such hearing, the judge shall appoint an individual to hear the case and exercise all the jurisdiction of the court in the case. . . ."); § 29-5-12 (d) (7) ("In any procedure under this [conservatorship] chapter in which the judge of the court is unable to hear a case within the time required for a hearing on the petition for conservatorship, the judge shall appoint an individual to serve to hear the case and exercise all the jurisdiction of the court in the case. . . ."). For ease of reference, we will refer to the hearing officer as the probate court.

4

summarized the dispute over the validity of the Estate Planning Documents but then stated, without further elaboration, that "[b]ased on other factors in this matter, it [was] not necessary for the Court to make a ruling on these issues."

In the "Conclusions of Law" section of its order, the probate court determined that there was clear and convincing evidence that Kurtzman was in need of a guardian and conservator, and the court further determined that it was in Kurtzman's best interest to have Amy and the Fulton County Conservator appointed to those respective positions. The probate court then explained that its determination that the appointment of Amy and the Fulton County Conservator would be in Kurtzman's best interest was

> based on the following factors: Richard . . . was the only other individual mentioned by [Kurtzman] as a potential nominee to serve as guardian and conservator. However, [Richard] submitted nothing in writing indicating that he wishes to be considered by the Court. He did not file a request for appointment, nor did he file any responsive pleadings. [Richard] appears to be relying exclusively on the [Estate Planning Documents] . . . .
>
> During testimony given at the [evidentiary hearing], and in the filed documents, the Petitioners are claiming that since [Kurtzman] lacks the ability to make significant responsible decisions concerning her health and safety and concerning her finances, the [Estate Planning

Documents] are likely invalid due to her lack of capacity at the time of their execution.

Kurtzman, by and through counsel, now appeals from the probate court's final order, challenging the court's ruling as to who should be appointed as her guardian and conservator.[4]

Under Georgia's Guardianship Code, OCGA § 29-4-1 et seq., the probate court must appoint a guardian for an adult ward "who shall best serve the interest of the adult." OCGA § 29-4-3 (a).[5] In selecting a guardian, the court must consider the order

---

[4] Kurtzman does not challenge the probate court's determination that she is in need of a guardian and conservator.

[5] OCGA § 29-4-3 provides in relevant part:
    (a) The court shall appoint as guardian that individual who will best serve the interest of the adult, considering the order of preferences set forth in this Code section. The court may disregard an individual who has preference and appoint an individual who has a lower preference or no preference; provided, however, that the court may disregard the preferences listed in paragraph (1) of subsection (b) of this Code section only upon good cause shown.
    (b) Individuals who are eligible have preference in the following order:
        (1) The individual last nominated by the adult in accordance with the provisions of subsection (c) of this Code section; . . .
    (c) At any time prior to the appointment of a guardian, an adult may nominate in writing an individual to serve as that adult's guardian should the adult be judicially determined to be in need of a guardian,

6

of preferences for appointment listed in OCGA § 29-4-3 (b). See OCGA § 29-4-3 (a). However, the court may disregard an individual who has higher preference under the statutory list in favor of someone who has less or no preference. See id. "[A]lthough the probate court must consider the statutory order of preferences, it is ultimately required to appoint as [guardian] that person who shall best serve the interests of the [adult ward]." (Citation and punctuation omitted.) *Cruver v. Mitchell*, 289 Ga. App. 145, 146 (1) (a) (656 SE2d 269) (2008). The same statutory framework applies to the appointment of a conservator under Georgia's Conservatorship Code, OCGA § 29-5-1 et seq. See *Cruver*, 289 Ga. App. at 146 (1) (a); OCGA § 29-5-3 (a), (b).

An adult may nominate someone to serve as his or her guardian or conservator in advance of the appointment, and the nominated individual is first on the statutory

---

and that nomination shall be given the preference described in this Code section, provided that it is signed in accordance with the provisions of subsection (e) of this Code section or the provisions of Code Section 31-32-5. . . .

> (e) A writing nominating the guardian of an adult:
>> (1) Must contain an express nomination of the individual who shall serve as guardian and must be signed or acknowledged by the individual making the nomination in the presence of two witnesses who sign in the individual's presence; and
>> (2) May be revoked by the individual by obliteration, cancellation, or by a subsequent inconsistent writing, whether or not witnessed.

preference list. See OCGA §§ 29-4-3 (b) (1); 29-5-3 (b) (1). The individual nominated to serve as guardian or conservator must be expressly nominated in writing by the adult, and the writing must be signed or acknowledged by the adult in the presence of two witnesses who sign in the adult's presence. See OCGA §§ 29-4-3 (c), (e) (1); 29-5-3 (c), (e) (1). An individual nominated in that manner is the sole person on the statutory preference list whose preference can be disregarded by the court "only upon good cause shown." OCGA §§ 29-4-3 (a); 29-5-3 (a).

In ruling on a petition for guardianship or conservatorship, the probate court "shall issue an order that sets forth the findings of fact and conclusions of law that support the grant or denial of the petition" and must "specify[ ] . . . the basis for the selection" of the guardian or conservator. OCGA §§ 29-4-13 (a) (1); 29-5-13 (a) (1). Absent an abuse of discretion, we will not disturb a probate court's decision regarding the selection. See *Cruver*, 289 Ga. App. at 146 (1) (a); *In re Moses*, 273 Ga. App. 501, 504 (1) (615 SE2d 573) (2005). Generally, "[a]n abuse of discretion occurs where a ruling is unsupported by any evidence of record or where that ruling misstates or misapplies the relevant law." (Citation and punctuation omitted.) *Eagle Jets v. Atlanta Jet, Inc.*, 347 Ga. App. 567, 576 (2) (820 SE2d 197) (2018).

8

On appeal, Kurtzman contends that the probate court abused its discretion by failing to rule on the validity of the Estate Planning Documents and consider the order of preferences for appointment of guardians and conservators set out by statute. See OCGA §§ 29-4-3 (a), (b) (1); 29-5-3 (a), (b) (1). According to Kurtzman, the validity of the Estate Planning Documents was the core issue in the case because they included her nomination of Richard as her proposed guardian and conservator, and the nomination was entitled to the highest preference by the probate court if those documents were valid. See id. Kurtzman further contends that the court erred in disregarding Richard (who testified at the hearing) as a potential guardian and conservator on the ground that he did not file a written request for appointment or file any pleadings in the proceedings.

The Petitioners respond that the probate court was not required to decide whether the Estate Planning Documents were valid and instead could pass over that issue and address whether there was good cause to disregard any statutory preference afforded to Richard under those documents. In this regard, the Petitioners maintain that even if the Estate Planning Documents were valid and Richard was properly nominated as guardian and conservator under them, there was evidence to support a

9

finding by the probate court that good cause had been shown to disregard the statutory preference existing in favor of Richard.

We agree with the Petitioners that the probate court could have chosen to pretermit whether the Estate Planning Documents were valid and proceed to address whether there was good cause shown to disregard any statutory preference afforded to Richard as a nominated individual under those documents. But that is not what occurred here. While the probate court entered a detailed final order, the court did not acknowledge or discuss the preference for individuals nominated by an adult under OCGA § 29-4-3 (b) (1) and § 29-5-3 (b) (1) or address whether, assuming the Estate Planning Documents were valid, there was "good cause shown" to disregard the statutory preference under the circumstances of this case. See OCGA §§ 29-4-3 (a); 29-5-3 (a). Rather, the probate court appears from the "Conclusions of Law" section of its order to have disregarded Richard as a potential guardian and conservator because, although he testified at the hearing, he did not file a written request for appointment or file any pleadings in the proceedings. But the probate court cited to no statutory provision or case law requiring an individual nominated to serve as guardian or conservator under OCGA § 29-4-3 (b) (1) and § 29-5-3 (b) (1) to submit

10

such a written request or filing before he or she can be considered for appointment, and we have found none.

Here, while the Petitioners challenged the validity of the Estate Planning Documents, their petition noted, as required by OCGA § 29-4-10 (b) (8) and § 29-5-10 (b) (9),[6] that Richard was nominated to serve as guardian and conservator under those documents, and in her response in opposition, Kurtzman also noted her choice of Richard in the Estate Planning Documents and asked that the probate court honor her wishes. The issue of whether Richard should be appointed as Kurtzman's guardian and conservator therefore was squarely and properly before the probate court for determination, irrespective of whether Richard separately filed a petition for guardianship and conservatorship or formally intervened in the proceedings. Moreover, the guardianship and conservatorship statutes setting forth the preference for an individual nominated by an adult do not include a requirement that the

---

[6] OCGA § 29-4-10 (b) (8) provides that "[t]he petition for the appointment of a guardian shall set forth[ ] . . . [i]f known, the name and address of any individual nominated to serve as guardian by the proposed ward, as described in paragraph (1) of subsection (b) of Code Section 29-4-3[.]" Similarly, OCGA § 29-5-10 (b) (9) provides that "[t]he petition for appointment of a conservator shall set forth[ ] . . . [i]f known, the name and address of any person nominated to serve as conservator by the proposed ward, as described in paragraph (1) of subsection (b) of Code Section 29-5-3[.]"

nominated individual file a written request for appointment or file any pleadings in the proceedings, see OCGA §§ 29-4-3; 29-5-3, and we will not engraft additional requirements onto the otherwise plain language of those statutes. See *Allen v. Allen*, 265 Ga. 53, 53 (1) (452 SE2d 767) (1995) (declining to "rewrite" a statute to include a new requirement where "[t]he plain language of the statute does not permit the grafting of such a requirement").

Accordingly, the probate court applied an incorrect analysis in determining who to appoint as Kurtzman's guardian and conservator, and the court thus abused its discretion. See *Cruver*, 289 Ga. App. at 148 (2) (concluding that [b]ecause the probate court applied an incorrect analysis in reviewing appellants' request for guardianship, it abused its discretion in denying the request"); *In re Estate of Taylor*, 270 Ga. App. 807, 809 (608 SE2d 299) (2004) (concluding that the probate court abused its discretion by disregarding statutory preferences based on its determination that the potential guardian had failed to comply with an unreasonably short deadline for obtaining a bond that had been imposed by the court). We therefore reverse the probate court's final order and remand the case for further consideration of who should be appointed as Kurtzman's guardian and conservator consistent with this

12

opinion. See OCGA §§ 29-4-3 (a), (b) (1); 29-5-3 (a), (b) (1); *Cruver*, 289 Ga. App. at 148 (2); *In re Estate of Taylor*, 270 Ga. App. at 809.[7]

*Judgment reversed and case remanded with direction. Land, J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

[7] We express no opinion regarding who should be appointed as Kurtzman's guardian and conservator on remand.