**THIRD DIVISION
DOYLE, P. J.,
GOBEIL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 6, 2023**

# In the Court of Appeals of Georgia

A23A0510. IN RE WHEELER.

PHIPPS, Senior Appellate Judge.

James Edward Wheeler's grandson and granddaughter-in-law petitioned the probate court to appoint a guardian and conservator for him. Following an evidentiary hearing, the court concluded that Wheeler needed both, and it appointed neutral third parties for those roles. Wheeler appeals, arguing that there was insufficient evidence that he a needed a guardian or conservator and that, if he did, the court should have appointed his step-daughter to be his guardian. Because there is evidence in the record supporting the probate court's findings and no basis to conclude that the court abused its discretion, we affirm.

The petition — filed by Wheeler's grandson, Lopez Nunn, and Lopez's wife, Adrian Nunn — alleged that then 87-year-old Wheeler suffered from dementia, could

not perform many activities of daily living, became confused and disoriented when moving about, could not make rational financial decisions, and was at risk for exploitation. The petition requested that Lopez be appointed as Wheeler's guardian and that the county conservator be appointed as his conservator. At the probate court's direction, Wheeler was evaluated by Tina Robinson, a licensed clinical social worker, who visited him at the home of Robbie Caldwell, his deceased wife's daughter, where he was living.

After the visit, Robinson issued a report finding that Wheeler was "alert" and "oriented to person/place," was moderately anxious, needed a rolling walker to ambulate, had impaired hearing and vision, suffered from dementia and other health issues, needed supervision with activities of daily living, could not read or write, and was at a high risk for falls. Robinson further found that Wheeler was living with Caldwell by choice, was part of a "large blended family [with] discord," was "well provided for," and was "vulnerable to others." Robinson concluded that Wheeler was incapacitated due to "advanced age, cognitive impairment complicated by hearing/vision deficits, anxiety/depression, [and] functional illiteracy" and that he needed both a guardian and a conservator.

Wheeler objected to the petition, denying that he needed a guardian or conservator, but stating that if he did, he wanted Caldwell to serve in those capacities because she had been "assisting [him] with his affairs[.]" Wheeler asserted that Lopez had a "conflict of interest" because he owed Wheeler money. The probate court appointed a guardian ad litem, who interviewed Wheeler, the Nunns, Caldwell, and others.

The matter proceeded to a hearing, where evidence was presented that Wheeler is a retired cattle farmer whose first wife died in 2016. At that point, Lopez and his family moved in with Wheeler to help care for him and the farm. Later that year, Wheeler married Caldwell's mother, Maxcine, and moved into her house, while Lopez and his family remained in Wheeler's house and continued to run his farm. Wheeler later deeded Lopez a half-interest in his house, as well as other property interests. When Wheeler and Maxcine began having health problems, in-home nurses cared for them during the day, while Lopez and his family and Caldwell and her family took turns spending nights with them. When Maxcine died in June 2021, Wheeler moved back in with Lopez and his family. Shortly thereafter, Wheeler asked Adrian to drive him to Caldwell's house, where he has lived ever since. Wheeler pays Caldwell $3,000 per month to care for him.

Wheeler testified that he wants to live with Caldwell, not Lopez. He stated that he used to love Lopez, but now "hate[d]" him and did not trust him because some of his cattle turned up missing under Lopez's care. However, Wheeler stated that he loved Lopez's children and would like to see them. Wheeler did not remember deeding any property to Lopez and believed that others had "tricked" him into signing certain documents. Wheeler was unable to identify the current day, month, or year; did not remember many matters relevant to probating his first wife's estate several years earlier; gave confusing testimony about certain family members; and was unaware that he had been making monthly payments to Caldwell.

Lopez testified that he and Wheeler had been close for many years, but their relationship had recently become "terrible." Lopez stated that he had reviewed the evaluator's report, agreed with her representation of his grandfather's status, and believed his grandfather was cognitively impaired, vulnerable to others, and easily influenced. In Lopez's view, Caldwell essentially "kidnapped" Wheeler and told him lies about Lopez. Lopez denied stealing Wheeler's cattle and claimed, instead, that he had sold the cows at Wheeler's request and given Wheeler the proceeds.

Lopez, Adrian, and Wheeler's sister all testified that when they visited Wheeler, Caldwell's family members stayed in the room and monitored the visits,

4

preventing any one-on-one time. Wheeler's sister further testified that she believed Wheeler had dementia because he did not "act right." Wheeler's daughter-in-law, an employee at a senior center, similarly testified that Wheeler appeared to be suffering from a "lack of mental faculties."

Caldwell testified that Wheeler treated her "like a daughter" and was always welcome in her home. She and her husband and children cared for him with no outside assistance. Caldwell denied supervising Wheeler's visits with his family, but conceded that she had asked Lopez to leave her home on multiple occasions and had threatened to call the police on him. Caldwell indicated that she would serve as Wheeler's guardian and conservator if he needed one.

The guardian ad litem testified that Caldwell's home was "tidy, homey, cozy, [and] loving"; that Wheeler had his own bedroom there; that Caldwell was a "very thorough caregiver" who made sure Wheeler's medical needs were met; that it was a "healthy environment" for Wheeler; that Wheeler considered the Caldwells to be his family; and that he was happy there and wanted to stay. The guardian ad litem found no evidence that Wheeler had dementia, but she conceded that she was not a medical professional. Finally, the guardian ad litem noted that there was "much animosity" between Lopez and Caldwell. The guardian ad litem recommended that

5

Wheeler remain in Caldwell's home and that the county conservator be appointed as his conservator.

After the hearing, the probate court entered an order finding that Wheeler lacked sufficient capacity to make or communicate significant responsible decisions concerning the management of his health, safety, and property "due to advanced age with cognitive impairment complicated by hearing/vision deficits, anxiety/depression and functional illiteracy." Accordingly, the court determined that Wheeler needed both a guardian and a conservator, and it appointed evaluator Robinson and the county conservator, respectively, in those capacities. The court specifically rejected Lopez and Caldwell for those roles:

> Both [Lopez] and Ms. Caldwell were nominated to serve as [Wheeler's] guardian. The Court, however, finds good cause to disregard the nominations of both. . . .

> In particular, the Court has concerns about the appointment of [Lopez] because of [Wheeler's] strong stated preference that [Lopez] not serve in this capacity. The Court has concerns about the appointment of Ms. Caldwell given credible testimony that under Ms. Caldwell's care, [Wheeler] has been alienated from many of his family members. In addition, given the clear acrimony between [Lopez] and Ms. Caldwell, the Court finds that it is in [Wheeler's] best interest for a neutral, third-party to serve as guardian.

6

The Court finds that it is in [Wheeler's] best interest for the County Conservator to be appointed conservator. The only other nominated conservator is Ms. Caldwell, and the Court finds that while Ms. Caldwell was nominated by [Wheeler], it is in [Wheeler's] best interest for a neutral third party to act as conservator in this case, particularly in light of the fact that Ms. Caldwell is receiving income for her services to [Wheeler].

Wheeler appeals from these rulings.

1. Wheeler argues that there was insufficient evidence to support the probate court's findings that he needed a guardian and conservator.[1] We disagree.

Under OCGA § 29-4-1 (a), "[t]he court may appoint a guardian for an adult only if the court finds the adult lacks sufficient capacity to make or communicate significant responsible decisions concerning his or her health or safety." Similarly, under OCGA § 29-5-1 (a), a conservator may be appointed for an adult "only if the

---

[1] The Nunns argue that Wheeler waived his right to challenge the appointments of a guardian and conservator on appeal. They point to Wheeler's attorney's statement at the hearing, "I don't object to a guardian, conservator, because . . . we want what's best for him." Immediately before making this statement, however, the attorney argued that Wheeler was not incapacitated and that the Nunns had not met their burden; and right after making it, counsel insisted that Wheeler should be allowed to make his own decisions and asked the court to deny the Nunns' petition. Accordingly, we do not interpret counsel's isolated statement, taken out of the context of his full argument, as a waiver.

court finds the adult lacks sufficient capacity to make or communicate significant responsible decisions concerning the management of his or her property." The trial court's determination that a guardian or conservator is needed must be supported by clear and convincing evidence. *In the Interest of M. P.*, 338 Ga. App. 696, 702 (2) (791 SE2d 592) (2016) (guardianship); *In re Cochran*, 314 Ga. App. 188, 190 (1) (723 SE2d 490) (2012) (conservatorship). On appeal from an order concerning guardianship or conservatorship, "we will not set aside the probate court's findings unless they are clearly erroneous. And where such findings are supported by *any evidence*, they will be upheld on appeal." *In re Cash*, 298 Ga. App. 110, 110 (679 SE2d 124) (2009) (citation and punctuation omitted; emphasis supplied); accord *Cruver v. Mitchell*, 289 Ga. App. 145, 147 (1) (b) (656 SE2d 269) (2008).

Here, there was evidence to support the probate court's findings concerning Wheeler's lack of capacity. The court-appointed evaluator, a licensed clinical social worker, reported that Wheeler had dementia and other health problems, needed supervision with activities of daily living, and was illiterate and vulnerable. Lopez agreed with this assessment. Wheeler's sister testified that he was suffering from dementia, and his daughter-in-law, who worked with seniors, noted Wheeler's lack of mental faculties. Finally, Wheeler's testimony in court suggested mental confusion

8

and showed a lack of recall of certain property and financial transactions. Thus, "the record contains evidence which supports the probate court's findings of fact, and those findings, in turn, support the legal conclusion that [Wheeler] was in need of a guardian and a conservator." *Cash*, 298 Ga. App. at 112.

Wheeler contends that there was no medical or "clinical" evidence of his mental capacity. However, such evidence is not required to establish incapacity. See *In re Copelan*, 250 Ga. App. 856, 864-865 (553 SE2d 278) (2001) ("A person's state of mind or mental condition is properly the subject of opinion testimony, and after narrating the facts and circumstances upon which the conclusion is based, a nonexpert witness may express his or her opinion as to the state of mind or mental condition of another."), overruled in part on other grounds by *Williams Gen. Corp. v. Stone*, 279 Ga. 428, 431 (614 SE2d 758) (2005). Wheeler also highlights his guardian ad litem's testimony that she saw no evidence of dementia and Caldwell's testimony that he can perform many self-care tasks. But "[a]s an appellate court, we are not at liberty to evaluate either the weight afforded the evidence below or the trial court's credibility determinations." *Cash*, 298 Ga. App. at 112. See also *Cruver*, 289 Ga. App. at 147 (1) (b) ("On appeal, we must defer to the probate court's credibility determinations."); *Epperson v. Epperson*, 212 Ga. App. 420 (442 SE2d 12) (1994) (affirming probate

9

court's finding that an adult needed a guardian even though evidence of his capacity was conflicting).

2. Wheeler also argues that the probate court erred by not appointing Caldwell to be his guardian. Again, we disagree.

Under OCGA § 29-4-3 (a), the court shall appoint a guardian "who will best serve the interest of the adult," considering the order of preferences set forth in the statute. See also OCGA § 29-4-12 (d) (6) ("The court shall select as guardian the individual who will serve the best interest of the ward."). "The individual last nominated by the adult" in accordance with statutory requirements has first preference, and the court may ignore this preference "only upon good cause shown." OCGA § 29-4-3 (a) & (b) (1). "In deciding whether to depart from the statutory preferences, the court shall consider all relevant factors, including the ability of the person to perform the duties of a guardian[.]" *In re Moses*, 273 Ga. App. 501, 504 (615 SE2d 573) (2005) (citation and punctuation omitted). We review the court's selection of a guardian for abuse of discretion. Id.

Wheeler argues that he "made his choice clear" that he wanted Caldwell to be his guardian and that the probate court abused its discretion by disregarding that

choice.[2] The Nunns argue that Caldwell enjoyed no priority because Wheeler failed to satisfy statutory requirements in nominating her to be his guardian[3] and that, in any event, the probate court had good cause to disregard Wheeler's choice. Pretermitting whether Wheeler's nomination of Caldwell was statutorily adequate, we find no abuse of discretion in the probate court's decision not to appoint her as his guardian.

The court found good cause to reject Caldwell as a guardian "given credible testimony that under [her] care, [Wheeler] has been alienated from many of his family members." In light of the "clear acrimony" between Caldwell and Lopez, the court determined that a "neutral, third-party" guardian would best serve Wheeler's interests. Because the court's factual findings of alienation and acrimony are supported by evidence in the record, we must accept them. See *Cruver*, 289 Ga. App. at 147 (1) (b). Further, given the court's broad obligation to consider "all relevant factors" in

---

[2] Notably, Wheeler does not argue that Caldwell should have been chosen as his conservator, or that Robinson is unfit to serve as his guardian. Rather, Wheeler's main concern appears to be his desire to continue living in Caldwell's home, where the court-appointed evaluator — now guardian — found that he is "well provided for."

[3] To be entitled to preference, an adult's nomination of an individual to be his guardian must be in writing and "must be signed or acknowledged by the individual making the nomination in the presence of two witnesses who sign in the individual's presence[.]" OCGA § 29-4-3 (c), (e) (1).

selecting a guardian, see *Moses*, 273 Ga. App. at 504 (citation and punctuation omitted), we find no abuse of discretion in the selection of a neutral party under the circumstances of this case. See *In re Holloway*, 251 Ga. App. 892, 894-895 (555 SE2d 228) (2001) (finding no abuse of discretion in the trial court's appointment of a county official to be the adult ward's guardian where evidence supported the court's determination that there was good cause not to appoint the ward's adult children in that role).

*Judgment affirmed. Doyle, P. J., and Gobeil, J., concur.*