## A93A2398. EPPERSON v. EPPERSON.
### (442 SE2d 12)

SMITH, Judge.

Appellee Robert J. Epperson sought and obtained in the probate court temporary guardianship over the person and property of his father, Verner Lee Epperson, due to advanced age and physical illness or disability. OCGA § 29-5-1 (a). The father appealed to the superior court for de novo review of the determination that he needed a guardian. OCGA §§ 5-3-2; 5-3-29. The superior court "affirmed" the probate court's ruling, finding "by clear and convincing evidence that the respondent is incapacitated by reason of physical illness and disability to the extent that the respondent lacks sufficient capacity to make significant responsible decisions concerning himself, and that respondent is incapable of managing his estate, and that the appointment of a guardian is necessary because his property would be wasted or dissipated, and further because his property is needed for the support, care and well-being of the respondent." Verner Epperson appeals to this court from that ruling. See OCGA §§ 29-5-11 (b); 5-6-35 (a) (1).

The evidence shows that Mr. Epperson, who was 79 at the time the superior court heard the case, has suffered two strokes in the past. After his second stroke, Robert Epperson testified that his father became unmanageable and that his mother could not take care of him. At that point Mr. Epperson was placed in Starcrest Nursing Home in Cartersville, Georgia, where he has resided ever since. Robert Epperson testified that prior to being admitted to Starcrest, his father drove an automobile contrary to doctor's orders, and that he was "heavily on sleeping pills." Verner Epperson's son and wife both testified that they could not control him prior to the time he entered Star-

crest. Robert Epperson confirmed that if his father were allowed to go home, his mother would have to move out due to the stress and potential for verbal abuse.

Valerie Boatright, director of nursing for Starcrest, confirmed that Mr. Epperson needed total assistance when he first arrived, but that he had been classified as a "minimal assist" for a year or longer. Boatright defined "minimal assist" as needing "supervision and some assistance at times." She described Mr. Epperson as "very oriented" and lucid. She testified that "he can ambulate, he can walk, he can feed himself, he can dress himself, if he falls he can get up, if his shoe comes off he can put it back on, you know, he can do all of those things, but I think he would need some supervision, and just like I said, he is in a nursing home and he is minimal assistance. He might need assistance with, you know, washing your back or stepping over something, you know, like a large step or something, he would need some assistance in that." Boatright testified that, in her opinion, Mr. Epperson could return home with assistance.

Cathy Crabtree, charge nurse at Starcrest, testified that Mr. Epperson is alert, oriented, and cooperative. Crabtree also testified that in her opinion, Mr. Epperson should be discharged and allowed to go home once home assistance could be provided for him. When pressed, however, she conceded that such assistance would necessarily entail help with medication, bathing, paying bills, preparing meals, and transportation. The court inquired of Crabtree "whether or not [Mr. Epperson] could survive independently without any type of assistance." Crabtree conceded that he could not.

Mr. Epperson also testified on his own behalf. He stated that he wanted to go home even if his wife moved out, because he "love[s] home," and "like[s] to be at home." Mr. Epperson also testified that prior to being admitted to Starcrest, he had lived at the same address since 1937. Mr. Epperson offered that if his wife stayed with him after he went home, he would "let her be boss," and "do what she says do."

Finally, Mr. Epperson relies upon the letter of a court-appointed psychologist, Dr. Isralsky, who concluded that Epperson is competent and able to manage his affairs. Dr. Isralsky also expressed the opinion that Mr. Epperson can be managed at home in a less restrictive environment, despite family concerns of potential abusiveness towards Mrs. Epperson if he returned home.

We find the record sufficient to support a finding by clear and convincing evidence that Mr. Epperson needs a guardian over his person and property. Mr. Epperson's son testified that his effort to be named guardian was initiated by his father's assertions to personnel at Starcrest that he was "leaving" and "going home." Starcrest officials informed Robert Epperson that they did not have the power to

keep him there if he wished to leave. Cathy Crabtree testified that Mr. Epperson could not survive on his own. The trial judge was authorized also to consider testimony that Mr. Epperson is "headstrong" and "always gets what he wants," as well as testimony that Mr. Epperson has previously driven an automobile against doctor's orders, and has abused sleeping pills in the past. This evidence is sufficient to support a finding by clear and convincing evidence that, because of advanced age and physical disability, and Mr. Epperson's apparent lack of understanding of the "significant responsible decisions" he would otherwise need to make himself *prior* to leaving Starcrest in order to ensure his very survival, a guardian should be appointed over his person and property. OCGA §§ 29-5-1; 29-5-11. We find no error.

*Judgment affirmed. Beasley, P. J., and Cooper, J., concur.*

DECIDED MARCH 11, 1994.

*T. Neal Brunt*, for appellant.
*H. Boyd Pettit III*, for appellee.