A98A0541. DOOB v. ATKINSON.
(500 SE2d 657)

POPE, Presiding Judge.

In July 1994 appellant Linda Atkinson Doob was appointed permanent guardian over the person and property of her mother, appellee Mary C. Atkinson, due to Atkinson's chronic use of alcohol. Atkinson, an 81-year-old widow, petitioned the Randolph County probate court pursuant to OCGA § 29-5-9 (a) to terminate the guardianship. After a hearing, the probate court denied the petition, and Atkinson appealed to the superior court. Doob appeals from the superior court's order granting summary judgment to Atkinson and relieving

Doob of her duties as guardian. We reverse.

"In determining whether the trial court properly granted summary judgment . . . we review the record de novo, construing the evidence and all inferences from the evidence strongly in favor of the nonmoving party." *Lane v. Spragg*, 224 Ga. App. 606 (481 SE2d 592) (1997). The record shows that in 1994 when Doob petitioned for guardianship, Atkinson was a chronic alcoholic. Atkinson began receiving treatment in 1992 for significant weight loss resulting primarily from alcohol use and also was diagnosed with chronic lung disease and liver problems. By 1994 Atkinson's condition had deteriorated to the point that she was not eating or bathing on a regular basis and had been found sleeping in her own waste and falling asleep with a lit cigarette. Her physician, Dr. Carl Sills, recommended that she be placed under guardianship. The probate court granted Doob's guardianship petition on July 5, 1994, finding that Atkinson was incapacitated by reason of "chronic use of alcohol."

After Doob was named guardian, Atkinson was placed in a nursing home, where she was allowed no access to alcohol. In addition, Atkinson was given a regular diet and her health and medication were monitored. After almost two years in this environment, Atkinson petitioned to terminate the guardianship, citing the opinion of Dr. Sills and her treating psychologist, Dr. Jimmy Shaddock, that she was no longer incapacitated.

At the hearing before the probate court,[1] Dr. Deborah Gatins, an addictions specialist, testified that Atkinson suffered from chronic alcoholism, which is classified as a disease by the American Medical Association. Dr. Gatins said that Atkinson has never accepted that she is alcohol-dependent. In an interview Atkinson told Dr. Gatins that she could not promise that she would not drink again, and she did not believe that she needed to participate in a recovery program such as Alcoholics Anonymous (AA) because she did not belong there. While Dr. Gatins acknowledged that Atkinson was not currently drinking and was fully oriented and aware, Dr. Gatins attributed that to the controlled environment of the nursing home. Based on these factors, Dr. Gatins concluded that Atkinson is still incapacitated because she is incapable of making a decision for herself as to whether she can drink alcohol and that she needs a guardian to make that decision for her.

Dr. Gatins also testified that an alcoholic such as Atkinson, who is in denial and who does not participate in a treatment program, has a 100 percent chance of drinking again. If Atkinson drinks again, Dr.

---

[1] The transcript from the probate court hearing was presented to the superior court for consideration in conjunction with the motion for summary judgment.

Gatins believes she will be "right back where she left off" in a matter of days and that would be a "death sentence."

Dr. Sills, Atkinson's physician, testified that he believed Atkinson to be competent, but acknowledged that she would never be "cured" of her alcoholism and that in his experience recovery from alcoholism required giving up alcohol and participating in a recovery program. Dr. Sills stated that if Atkinson started drinking again, she would very likely revert to the same physical condition in which she had been in 1994.

Dr. Shaddock, Atkinson's psychologist, testified that Atkinson was competent in that her reasoning and memory were intact and she had the present ability to make good decisions. He noted, however, that she needed to be actively involved in AA or some other form of group support. Although Dr. Shaddock declined to make any predictions about Atkinson's future behavior, he conceded that if she began drinking the way she did before, she would be dead.

Christina Scribner, the director of nurses at Atkinson's nursing home, testified that Atkinson would be capable of taking care of herself outside the nursing home, but only "if she had a peer support in place to assist her with her health problems, mental and physical." Scribner also noted that even in the nursing home environment Atkinson refused most of her medicines and sometimes did not eat when she became absorbed in reading.

Atkinson testified that she believes that she has a problem with alcohol, but she does not remember doing anything "real bad" under the influence of alcohol. Atkinson said that she has no plans to drink again but does not know if she would go back to AA or any other recovery group because of the difficulty of getting there.

Contrary to the superior court's determination, this record presents a question of fact as to whether Atkinson remains incompetent and lacks "sufficient understanding or capacity to make significant responsible decisions" concerning her person and property. OCGA § 29-5-1. In particular, evidence of Dr. Gatins' opinion that Atkinson is still incapacitated by alcohol and Atkinson's refusal of prescribed medication raised a factual issue as to whether Atkinson presently is competent to make appropriate decisions for herself regarding her health and the treatment and management of her disease. See *Epperson v. Epperson*, 212 Ga. App. 420 (442 SE2d 12) (1994) (court affirmed guardianship where seventy-nine-year-old man disabled by two strokes functioned with minimal assistance in a nursing home environment, but would require substantial assistance outside that environment). Compare *Jones v. Jones*, 191 Ga. App. 401 (381 SE2d 565) (1989) (affirming the termination of a guardianship after trial court examined medical evidence and conducted a face-to-face interview with the ward in which he had an opportunity to

observe ward's appearance, speech and demeanor).
*Judgment reversed. Beasley and Ruffin, JJ., concur.*

DECIDED MAY 6, 1998.

*Bowles & Bowles, Jesse G. Bowles III*, for appellant.
*Collier, Hunt & Gamble, Edward R. Collier*, for appellee.