A06A1739. CHESSER v. CHESSER.
(643 SE2d 764)

MIKELL, Judge.

As guardian of his mother's property, Charles Chesser sued his brother Curtis Chesser to regain real and personal property that their mother, Pauline Kile, transferred to Curtis shortly before she was declared incompetent. After a bench trial, the trial court entered judgment for Curtis. Because there was some evidence to support the trial court's verdict, we affirm.

> Upon appellate review, factual findings made after a bench trial shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. OCGA § 9-11-52 (a). The clearly erroneous test is the same as the any evidence rule. Thus, an appellate court will not disturb fact findings of a trial court if there is any evidence to sustain them.[1]

So viewed, the record shows that Kile had been living in her home for 19 years when, in August 2002, she executed a durable power of attorney authorizing either of her two sons, Charles and Curtis, to act as her attorney in fact. Later that same month, after returning from a trip to New York with Charles, Kile revoked this power of attorney and executed a new one authorizing only Curtis to act as her attorney in fact.

In the course of 2003, Charles twice indicated to his brother that he wanted his mother's house sold. In September of that year, Curtis assumed responsibility for his mother's care and moved into her house. In October, Kile transferred two certificates of deposit, worth

---

[1] (Citations and punctuation omitted.) *Sam's Wholesale Club v. Riley*, 241 Ga. App. 693-694 (527 SE2d 293) (1999).

$5,000 each, to Curtis. On November 18, Charles and his wife filed a petition for the appointment of a guardian under OCGA § 29-5-6 (a) in Cobb County Probate Court. Two days later, the probate court appointed a psychologist to evaluate Kile as an "alleged incapacitated adult," noting that "there is sufficient evidence to believe that the proposed ward is incapacitated within the meaning of OCGA § 29-5-1." On November 24, Kile executed a quitclaim deed conveying her house to Curtis. Two days later, Kile's doctor expressed his written opinion that his patient was "mentally competent to manage her own affairs," including "decisions about the disposition of her finances, her property, living location, and medical care."

On December 10, 2003, however, the court-appointed psychologist found that Kile was incapacitated due to dementia. After notice and a hearing, the probate court found on January 12, 2004, that Kile was incapacitated "to the extent that [she] is incapable of managing her estate and the property of the ward will be wasted or dissipated unless proper management is provided[,]" and that the incapacity "appears to be permanent." The probate court then appointed Charles as the permanent guardian of his mother's property, although it denied his petition for guardianship over her person.

Soon afterward, and in his capacity as guardian of her property, Charles filed suit for undue influence, conversion and fraud, seeking recovery of the two certificates of deposit and restoration of title to the homeplace as well as punitive damages and fees. Charles's motion for summary judgment was denied. At the conclusion of a bench trial, the trial court found that Charles had not proved undue influence and entered judgment for Curtis. Charles now appeals, arguing that the verdict was contrary to the evidence, which established undue influence as a matter of law.

"[I]nfluence is considered undue only if it constrains or coerces a person into doing that which his best judgment tells him not to do and deprives him of his free agency and substitutes the will of another person for his own."[2] "Generally, the question of undue influence is for the factfinder."[3]

We reject Charles's initial contention that because Curtis now lives with his mother, a confidential relationship existed between them sufficient to establish undue influence as a matter of law. It is true that "the domination of the grantor by the grantee, exemplified by the grantee's provision of shelter and care," can justify a jury

---

[2] (Citation and punctuation omitted.) *Kendrick-Owens v. Clanton*, 271 Ga. 731, 732 (524 SE2d 237) (1999).

[3] (Citation omitted.) *Mathis v. Hammond*, 268 Ga. 158, 160 (3) (486 SE2d 356) (1997).

charge concerning undue influence.[4] Undue influence is not established as a matter of law, however, unless "the grantee of a gift of real property stands in a confidential relationship with the grantor of real property, *and* the grantor is of a weak mentality."[5]

Here, the probate court did not find Kile incapacitated until January 12, 2004, weeks after she had transferred the homeplace to Curtis, and the evidence before the trial court concerning her mental state at the time of the transfer included the written opinion of Kile's physician, formed two days afterward, that Kile was mentally competent to manage her own person and property. Because Kile had not yet been determined to be incapacitated as a matter of law at the time she transferred her property to Curtis, and because there was some evidence that she was not of weak mentality at that time, we conclude that the trial court's verdict was supported by the evidence.[6]

Charles repeatedly asserts that because the probate court found some evidence of incapacity on November 20, four days before Kile executed the quitclaim deed, undue influence was made out as a matter of law. However, the order of November 20 merely recited the language of OCGA § 29-5-6 (b) (1) when it stated that there was "sufficient evidence to believe that the *proposed* ward is incapacitated." Under the version of the statute in effect at the time that Charles brought his petition, when two or more persons swear out a petition for the appointment of a guardian, "the judge of the probate court shall review the petition . . . and determine whether there is *sufficient evidence to believe that the proposed ward is incapacitated* within the meaning of [OCGA §] 29-5-1."[7] If the probate court determines on the basis of the petition that there is sufficient evidence to justify a psychological evaluation, the court must then appoint a psychologist or psychiatrist for that purpose.[8] At this stage of the procedure,

---

[4] (Citation omitted.) Id. at 160-161 (4) (affirming denial of motion for directed verdict where there was some evidence to support a finding of undue influence, and approving jury charge on the law of presumption thereof).

[5] (Punctuation omitted; emphasis supplied.) Id. at 160 (4).

[6] See *Kendrick-Owens*, supra at 733 (reversing jury's verdict where evidence was insufficient to show undue influence).

[7] (Emphasis supplied.) OCGA § 29-5-6 (a) (3), (b) (1) (2003) (repealed effective July 1, 2005). See also OCGA §§ 29-4-10 (c) (1), 29-5-10 (c) (1) (also requiring either two or more petitioners or a professional affidavit); OCGA §§ 29-4-11 (a), 29-5-11 (a) (requiring the court to review the petition and "determine whether there is probable cause to believe that the proposed ward is in need of" a guardian or conservator).

[8] OCGA § 29-5-6 (b) (2) (E), (c) (2003); compare OCGA §§ 29-4-11 (d) (1), 29-5-11 (d) (1). We note the statutes' command that "[t]he evaluation shall be conducted with as little interference with the proposed ward's activities as possible." OCGA § 29-5-6 (c) (4) (2003); OCGA §§ 29-4-11 (d) (3), 29-5-11 (d) (3); see also *Milam v. Terrell*, 214 Ga. 199, 202 (2) (104 SE2d 219) (1958) (jurisdiction of court inquiring into a person's capacity to manage her own estate is "extremely limited," and "the proceedings are summary and must be strictly construed") (citations omitted).

however, the incapacity of the ward remains an unproven proposition, not a proven fact.[9]

The probate court in this case did not find Kile either of weak mentality or incapacitated until January 2004, and the trial court found as a matter of fact that Kile was not of weak mentality at the time she transferred her property to Curtis. Because there was some evidence to support the trial court's conclusion on the factual question whether Curtis exercised undue influence over his mother at the time she transferred her property to him, we affirm its judgment in his favor.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 28, 2007 —
RECONSIDERATION DENIED MARCH 21, 2007 — 

*Nall & Miller, Michael D. Hostetter, Benjamin S. Persons IV,* for appellant.

*David M. Shippert, Robert A. Kunz,* for appellee.

---

[9] See OCGA § 29-5-7 (e) (3) (2003); OCGA §§ 29-4-21 (a), 29-5-21 (a) (removing personal and property rights from ward upon appointment of guardian or conservator).