**WHOLE COURT**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 21, 2014**

# In the Court of Appeals of Georgia

A14A1365. IN RE: DAVIS

McFADDEN, Judge.

This appeal is from a probate court order dismissing, for lack of probable cause, a petition for appointment of a guardian and/or conservator for an allegedly incapacitated adult. The appellants correctly assert that the probate court, having previously found sufficient probable cause to warrant filing of the petition, erred in dismissing it without requiring an evaluation of the proposed ward. Such an evaluation was mandated by OCGA §§ 29-4-11 and 29-5-11 as a prerequisite to the court's finding that there is not probable cause to believe the proposed ward is in need of a guardian and/or conservator. Accordingly, the probate court's erroneous dismissal order must be reversed and the case remanded with direction that the required evaluation be completed.

On October 1, 2013, Vicky Davis and Tabitha Davis filed a verified petition for appointment of a guardian and/or conservator for Radric Davis a/k/a Radric Dudley. According to the petition, the proposed ward "has a history of psychological problems," has been institutionalized on at least three occasions, and has been diagnosed with bipolar disorder and schizophrenia. The petitioners also alleged that, as a result of his psychological problems and abuse of a variety of drugs, the proposed ward has engaged in violent behavior, including assaulting a patron in a bar and almost coming to blows with another shopper at a mall, and that he sent out messages via Twitter describing in "graphic and profane terms" alleged sexual escapades with various women. The petition also stated that court records indicate the proposed ward has been in jail in Fulton County at least five times since 2005 on charges involving drugs, aggravated assault, and aggravated assault with a deadly weapon, although the court records are not attached to the petition. The petitioners further alleged that although the proposed ward has made millions of dollars over the course of a successful music career, he has no savings, no insurance, and has failed to pay income taxes, resulting in significant liability to the Internal Revenue Service. The petitioners sought to have the proposed ward's mother, Vicky Davis, appointed guardian of his person and conservator of his property.

Upon review of the petition, the probate court initially determined that sufficient evidence existed to believe that the proposed ward was in need of a guardian and/or conservator. The court ordered a licensed clinical social worker to evaluate the proposed ward, ordered the proposed ward to submit to the evaluation, and ordered that notice be given to the proposed ward and all interested persons listed in the petition. The notice to the proposed ward explained that he was required to attend the evaluation, but did not have to respond to questions. The evaluation as initially scheduled did not take place because the proposed ward had been transferred from the Fulton County Jail to the DeKalb County Jail and the probate court was not aware of the transfer prior to the evaluation date. The evaluation was rescheduled and notice of the new date was provided to the parties and all interested individuals.

On November 22, 2013, the date of the rescheduled evaluation, the social worker went to the DeKalb County Jail to evaluate the proposed ward, but he refused to meet with the evaluator without his attorney present. The social worker waited for an hour, but the attorney did not appear, so no evaluation was conducted. The social worker filed a report with the probate court, indicating that no evaluation had taken place due to the proposed ward's refusal to meet without his attorney present and stating that "[t]his evaluator does not have enough information . . . to make a

3

finding." The evaluator further provided that she was unable to make findings concerning mental illness of the proposed ward "without proper evaluation."

Despite the lack of an evaluation or any findings by the social worker, the probate court issued an order dismissing the petition. The court determined that there was no probable cause to support a finding that the proposed ward was in need of a guardian and conservator, noting that the only documentation provided by the petitioners to support their claims of ongoing psychological problems, drug abuse, and criminal charges were news reports. The order was signed by a judicial hearing officer exercising the jurisdiction of the probate court.

The petitioners filed a motion for reconsideration of the order dismissing their petition, requesting that the court either schedule another evaluation of the proposed ward and require his attorneys to appear or schedule a hearing on their petition. They also filed a transcript of a probation revocation hearing held on September 26, 2013, in which a psychiatrist who had examined the proposed ward and his medical records testified about the proposed ward's need for inpatient psychiatric treatment. According to the psychiatrist, the medical records show that the proposed ward has been off of his prescribed anti-psychotic and mood stabilizing medications and has a history of bipolar disorder and schizophrenia and substance abuse. In his meeting

4

with the proposed ward, the psychiatrist learned that he has a co-morbid substance use disorder, specifically the use of marijuana and a prescription cough syrup containing codeine, which can be extremely addictive, and promethazine, which can cause psychosis. The psychiatrist was unable to state whether the proposed ward's behavior was based more on the primary psychiatric issue or on the substance abuse issue. He did note that the proposed ward's behavior had improved in the 13 days since his arrest, but could not conclude definitively that the problem was only substance abuse.

After reviewing the motion for reconsideration and the attached exhibits, the probate court denied the motion. The petitioners appeal.

1. *Evaluation of proposed ward.*

The appellants assert that the probate court abused its discretion by not ordering that an evaluation of the proposed ward be rescheduled and conducted after he had refused to participate in the previously-scheduled evaluation without his attorney present. We agree.

OCGA §§ 29-4-11, 29-4-12, 29-5-11 and 29-5-12, set forth frameworks for consideration of petitions for guardianship and for conservatorship of proposed wards. Upon the filing of such a petition, the court must review it and make an initial

5

determination of whether there is probable cause to believe that the proposed ward is in need of a guardian or conservator. OCGA §§ 29-4-11 (a) and 29-5-11 (a). If the court makes an initial determination that probable cause does not exist, it is to dismiss the petition. OCGA §§ 29-4-11 (b) and 29-5-11 (b). But, if the court makes an initial finding of probable cause, the court "shall" order an evaluation of the proposed ward. OCGA §§ 29-4-11 (c) (1) (C), (d) (1) and 29-5-11 (c) (1) (C), (d) (1). And upon that initial review of the petition and determination that there is probable cause to believe that the proposed ward is in need of a guardian or conservator, the court *must* appoint a licensed physician, psychologist, or clinical social worker to evaluate the proposed ward. OCGA §§ 29-4-11 (a), (d) (1) and 29-5-11 (a), (d) (1).

Once appointed, the physician, psychologist or social worker is to conduct the evaluation, which may include a self-report of the proposed ward, questions and observations of the proposed ward, and a review of medical records. OCGA §§ 29-4-11 (d) (3) and 29-5-11 (d) (3). During the evaluation, the proposed ward may remain silent and may have legal counsel present, although counsel may not participate in the evaluation. OCGA §§ 29-4-11 (d) (2) and 29-5-11 (d) (2). The physician, psychologist or social worker must then file a written report with the court no later than seven days after the evaluation. OCGA §§ 29-4-11 (d) (4) and 29-5-11 (d) (4).

6

The report is to state, among other things, the circumstances and elements of the evaluation, list all persons and sources of information consulted, describe the proposed ward's mental and physical condition, and describe the needs of the proposed ward. OCGA §§ 29-4-11 (d) (5) and 29-5-11 (d) (5).

After the evaluation report has been filed, the court is to review the report and the pleadings in order to make another probable cause determination. OCGA §§ 29-4-12 (a) and 29-5-12 (a). If, after the review, the court finds no probable cause to support a finding that the proposed ward is in need of a guardian or conservator, then the court is to dismiss the petition. OCGA §§ 29-4-12 (b) and 29-5-12 (b). But, if the court finds probable cause, it is to schedule a hearing on the petition. OCGA §§ 29-4-12 (c) and 29-5-12 (c).

Here, it is undisputed that the probate court initially complied with the statutory mandates by determining that probable cause existed to believe that the proposed ward was in need of a guardian or conservator, and by ordering that the proposed ward be evaluated by a licensed clinical social worker. But, the required evaluation never took place. Rather, as explained above, the initially scheduled evaluation at the Fulton County Jail did not occur because, unbeknownst to the court, the proposed ward had been transferred to another jail. And as also recounted above, the

7

rescheduled evaluation at the new jail also did not take place because the proposed ward refused to be evaluated without his attorney present. The evaluator then filed a report with the probate court indicating that no evaluation had taken place because the proposed ward had refused to meet without his attorney present. So, the evaluator made none of the required findings as to the proposed ward's capacity or whether he meets the standards for a guardian or conservator; she expressly informed the court that she did "not have enough information . . . to make a finding."

Indeed, in its order dismissing the petition, the probate court actually acknowledged that the proposed ward had refused to meet with the evaluator and that the evaluator had concluded that she did not have enough information to make a finding as to capacity and the need for a guardian or conservator. Nevertheless, the court went on to make its own finding that there was no probable cause to support a finding that the proposed ward was in need of a guardian or conservator. Based on that finding of no probable cause, the probate court dismissed the petition pursuant to OCGA §§ 29-4-12 (b) and 29-5-12 (b).

But, under those code sections, such a finding and order of dismissal can be made only after the court has reviewed the required evaluation report. So, the undisputed facts in the record establish that the trial court erred in failing to require

8

that the statutorily-mandated evaluation take place and that the evaluation report be filed before making a probable cause determination and dismissing the petition.

In arguing otherwise, the dissent mistakenly claims that our decision somehow "wrest[s] discretion from the probate courts of Georgia." It does no such thing. This decision does nothing more than apply the plain language of the applicable code sections to the undisputed facts.

The dissent misstates what in fact occurred by writing that "the proposed ward exercised his right not to speak to the evaluator and to insist that his counsel be present. . . . [The court] had no power to compel him to cooperate and speak to the evaluator." Certainly, the dissent is correct that, as provided in OCGA §§ 29-4-11 (d) (3) and 29-5-11 (d) (3), the proposed ward may remain silent during the evaluation, when it eventually occurs, and have counsel present. But contrary to the dissent's misstatement of the facts, the proposed ward did not exercise his right to remain silent during an evaluation. No evaluation ever took place. The proposed ward refused to meet with the social worker or be evaluated because his attorney was not present.

Under such circumstances, the probate court should have rescheduled the evaluation. Because the court failed to do so and improperly dismissed the petition without an evaluation having been conducted and without the requisite evaluation

9

report having been submitted for the court's consideration, the dismissal order must be reversed and the case remanded with direction that the evaluation be conducted and the report submitted.

2. *Remaining enumerations.*

Because of our holding above, we need not address the appellants' remaining enumerations of error, concerning the delegation of duties to a judicial hearing officer, the finding of no probable cause, and the denial of the motion for reconsideration.

*Judgment reversed and case remanded with direction.  Doyle, P. J.,  Boggs, Ray and Branch, JJ., concur.  Andrews, P. J. and Barnes, P. J., dissent.*

10

A14A1365.  IN RE: DAVIS

ANDREWS, Presiding Judge, dissenting.

Because the majority's interpretation of OCGA §§ 29-4-11 and 29-5-11 will lead to unreasonable results and impermissibly wrest discretion from the probate courts of Georgia, I respectfully dissent.

As a threshold matter, while the majority notes that an evaluation did not occur as scheduled on November 22, 2013 due to the proposed ward's refusal to participate without counsel present, the report filed by the evaluator nonetheless included information upon which the probate court could base its ruling.  Specifically, the evaluator found that

> This evaluator does not have enough information based on what's in the findings to make a finding. It is reported that the proposed ward has psychiatric co-morbidities of Schizophrenia and Bipolar Disorder as well as a substance abuse history. This evaluator is unable to infer the

level of any severe and persistent mental illness that proposed ward may have without proper evaluation. Drug abuse can produce schizophrenic like psychosis as well. It appears that when the proposed ward gets in trouble with the legal system he may experience possible manic episodes related to bipolar disorder and/or the fact that he may be abusing substances at the same time. Substance abuse can impact the course of mental illness and cognitive functioning. There must be caution in diagnosing bipolar disorder in the presence of substance abuse. Also, proposed ward would need to be evaluated during a sustained period of abstinence from illicit drug or alcohol use to rule out Substance Abuse Mood Disorder and Substance Abuse Induced Psychotic Disorder.

1. As noted by the majority, the petitioners claim that the probate court abused its discretion by not re-ordering another evaluation of the proposed ward. They argue that the case should be remanded to allow the evaluation to take place. For the reasons that follow, I find no abuse of discretion.

Generally, this Court reviews issues concerning the appointment of a guardian or a conservator for an abuse of discretion. See *Cruver v. Mitchell*, 289 Ga. App. 145 (656 SE2d 269) (2008); *In re Estate of Taylor*, 270 Ga. App. 807 (608 SE2d 299) (2004). Upon initial review of the petition for guardianship or conservatorship, if the probate court determines that there is probable cause to believe that the proposed ward is in need of a guardian or conservator, the court must appoint a licensed

2

physician, psychologist, or clinical social worker to evaluate the proposed ward. OCGA §§ 29-4-11 (a), (d) (1); 29-5-11 (a), (d) (1). The proposed ward has the right to remain silent during the evaluation, and the proposed ward's legal counsel has the right to be present, but cannot participate in the evaluation. OCGA §§ 29-4-11 (d) (2), 29-5-11 (d) (2). To the extent that the proposed ward's refusal to participate can be considered a failure to appear, the probate court has the authority to order that he be taken directly to a medical facility for purposes of conducting the evaluation. OCGA §§ 29-4-11 (d) (3), 29-5-11 (d) (3).

Here, the proposed ward exercised his right not to speak to the evaluator and to insist that his counsel be present. The evaluator filed the report required by OCGA §§ 29-4-11 (d) (4) and 29-4-11 (d) (4), and the probate court was not required to consider this a failure to appear and order that the proposed ward be taken directly to a medical facility for evaluation. And even if the court had taken this approach, it had no power to compel him to cooperate and speak to the evaluator. Under the circumstances, I conclude that the trial court did not abuse its discretion in failing to re-schedule another evaluation of the proposed ward.

This analysis not only comports with OCGA §§ 24-4-11 and 24-5-11, but with common sense. Under the majority's reasoning, proposed wards could fend off

3

evaluations ad infinitum by merely refusing to participate without counsel being present (counsel who, pursuant to OCGA §§ 29-4-11 (d) (2) and 29-5-11 (d) (2), may not participate in the evaluation). The majority does not suggest any safeguard to prevent such an occurrence. As a result, the majority impermissibly restricts the probate court's discretion by essentially requiring repeated fruitless attempts to force evaluations. In this instance, the probate court was well within its discretion to conclude that no probable cause had been shown and, as a result, dismiss the petition. See OCGA §§ 29-4-12 (b), 29-5-12 (b).

Because I would affirm the trial court's decision to dismiss the petition, I review the remainder of the petitioners' enumerated errors.

2. Next, the petitioners claim that the judicial hearing officer lacked jurisdiction to conduct the post-evaluation review of their petition. They argue that the order dismissing their petition is therefore void.

After the evaluation report is filed, the probate court must review the pleadings and the evaluation report and determine if there is probable cause to believe that the proposed ward is in need of a guardian or conservator. OCGA §§ 29-4-12 (a), (b); 29-5-12 (a), (b). If the court finds no probable cause, the court shall dismiss the petition. OCGA §§ 29-4-12 (b), 29-5-12 (b). If the court does find probable cause, the court

4

shall schedule a hearing on the petition. OCGA §§ 29-4-12 (c), 29-5-12 (c). The petitioners take the position that the mandatory language in the statutes did not allow the probate court to delegate its duties to a judicial hearing officer.

Pursuant to OCGA § 29-4-12 (7),

> [in] any procedure under this chapter in which the judge of the court is unable to hear a case within the time required for such hearing, the judge shall appoint an individual to hear the case and exercise all the jurisdiction of the court in the case. Any individual appointed shall be a member of the State Bar of Georgia who is qualified to serve as the probate judge in that county and who is, in the opinion of the appointing judge, qualified for the duties by training and experience.

OCGA § 29-5-12 (7) is essentially the same provision, applied to petitions for conservatorships. The orders signed by the judicial hearing officer referred to these statutes as the basis for the hearing officer's authority to exercise the probate court's jurisdiction. The petitioners do not take issue with the hearing officer's qualifications to serve, but argue that these statutory provisions only apply to the hearing required if the court finds probable cause to support the petition.

"When we consider the meaning of a statute, we look first to the text of the statute, and if the text is clear and unambiguous, we look no further, attributing to the statute its plain meaning." *Hendry v. Hendry*, 292 Ga. 1, 2 (734 SE2d 46) (2012)

5

(citations and punctuation omitted). Both statutes plainly state that in any procedure under the relevant chapter (Chapter 4, Guardians of Adults, or Chapter 5, Conservators of Adults), if the judge is unable to hear a case within a designated time frame, the judge may appoint an individual to hear the case, and that individual may exercise all of the court's jurisdiction in the case. The appointed individual's authority would thus include conducting a hearing on the petition for appointment of guardian or conservator as well as any other procedures under the relevant chapter. I therefore find no merit in the petitioners' claim.

3. The petitioners next contend that the probate court erred in finding no probable cause to support the need for a guardian or conservator. They argue that their verified petition provided sufficient evidence that the proposed ward needed a guardian and conservator such that the probate court should have ordered a hearing, which would have allowed them the opportunity to present the proposed ward's medical and criminal records.

A petition for the appointment of a guardian or conservator may be filed by any interested person and "shall be sworn to by two or more petitioners" or supported by an affidavit from a licensed physician, psychologist, or clinical social worker who has examined the proposed ward within 15 days prior to the filing of the petition. OCGA

6

§§ 29-4-10 (a), (c) (1), (c) (2); 29-5-10 (a), (c) (1), (c) (2). The basic finding that the probate court must make when considering a petition for guardianship is that "the adult lacks sufficient capacity to make or communicate significant responsible decisions concerning his or her health or safety." OCGA § 29-4-1 (a). The necessary finding for a conservatorship is that "the adult lacks sufficient capacity to make or communicate significant responsible decisions concerning the management of his or her property." OCGA § 29-5-1 (a). "The focus here is not on the adult's overall mental or physical state or on any diagnosis that has been made of the adult but rather solely on the adult's decision-making capacity." Mary F. Radford, *Georgia Guardianship and Conservatorship* § 4:1, p. 210 (2014).

The petitioners note that the probate court found probable cause after its initial review of the petition, prior to ordering an evaluation, and argue that the court lacked any basis to overturn that prior determination. When the probate court makes an initial determination on the basis of the petition that there is sufficient evidence to justify an evaluation, however, "the incapacity of the ward remains an unproven proposition, not a proven fact." *Chesser v. Chesser*, 284 Ga. App. 381, 384 (643 SE2d 764) (2007). Thus, the probate court was not bound by its initial probable cause determination.

7

At the post-evaluation stage, the probate court must review the pleadings and the evaluation report and make a second probable cause determination. To support the need for a guardian, the petition states that the proposed ward has been diagnosed with bipolar disorder and schizophrenia and details a few incidents of violence and inappropriate behavior stemming from his psychological problems and abuse of a variety of drugs. To support the need for a conservator, the petition states that the proposed ward has not spent the money he has made over the course of his career wisely, resulting in a lack of savings, no insurance, and a significant liability to the Internal Revenue Service. The evaluator reviewed this information and was unable to determine "any severe and persistent mental illness" the proposed ward may have without further evaluation, but cautioned that "substance abuse can impact the course of mental illness and cognitive functioning." She noted that drug abuse could cause schizophrenic-like psychosis and that one must be cautious in diagnosing bipolar disorder in the presence of substance abuse.

An adult will not be presumed to be in need of a guardian or conservator solely because the adult has been found to be in need of treatment or services for drug or substance abuse, addiction or dependency or mental illness. OCGA §§ 29-4-1 (e) (2), 29-5-1 (e) (2); Mary F. Radford, *Georgia Guardianship and Conservatorship* §§ 4:1.,

8

pp. 215-216; 5:1, p. 313. And "[a] person does not lack decision-making capacity merely because he or she does things that others either do not understand or find disagreeable." Mary F. Radford, *Georgia Guardianship and Conservatorship*, § 4:1, p. 212 (citation and punctuation omitted).

The petitioners rely on *Epperson v. Epperson*, 212 Ga. App. 420 (442 SE2d 12) (1994), to support their claim that the proposed ward is in need of a guardian. In *Epperson*, however, the proposed ward was elderly, had suffered two strokes, was unable to care for himself, and had abused sleeping pills in the past. Id at 420-421. The only similarity between the two cases is the abuse of drugs and there is no indication in *Epperson* that the prior abuse of sleeping pills alone would have been sufficient to support a guardianship petition.

With respect to the need for a conservator, the petitioners rely upon *In re Cash*, 298 Ga. App. 110 (679 SE2d 124) (2009) and *Cummings v. Stanford*, 193 Ga. App. 695 (388 SE2d 729) (1989). In *Cash*, the 94-year-old proposed ward was living in an assisted living facility, could not care for herself yet refused to move to a floor that would have provided the services she needed, and refused to pay her bills, including bills for private nursing services. *Cash*, supra, 298 Ga. App. at 110-111. In *Cummings*, the trial court found that the proposed ward, due to advanced age and

9

perhaps mental disability, was incapable of managing her financial resources. *Cummings*, supra, 193 Ga. App. at 696 (1). Evidence showed that since her husband's death, the proposed ward had bought another house, while continuing to maintain two other houses, was unable to account for thousands of dollars she had spent, and was apparently being exploited financially by her sons. *Cummings*, supra at 695-696. The evidence offered by the petitioners here, a statement that the proposed ward was not paying taxes and did not have savings, does not rise to the same level as the situations in *Cash* or *Cummings*. The fact that an adult chooses to "waste" his or her assets by investing them in a losing or frivolous venture or to gamble instead of paying a bill does not in and of itself indicate the need for a conservatorship. Mary F. Radford, *Georgia Guardianship and Conservatorship* § 5:1, p. 308.

Accordingly, I find no error in the probate court's determination that the petitioners have not adequately shown probable cause to support a finding that the proposed ward is in need of a guardian or conservator within the meaning of OCGA §§ 29-4-1 and 29-5-1. See generally *Yetman v. Walsh*, 282 Ga. App. 499, 501 (2) (639 SE2d 491) (2006) ("Similar to a ruling on a motion for summary judgment in a civil action, a ruling on whether probable cause exists to proceed in a conservatorship

proceeding is a pre-trial procedure that is designed to ferret out meritless claims without the expense and trouble of a trial.").

4.  Finally, the petitioners assert that the trial court abused its discretion by denying their motion for reconsideration. They argue that the testimony of a psychiatrist who had examined the proposed ward was sufficient to show that there is probable cause to believe the proposed ward needs a guardian and conservator.

As noted above, an adult will not be presumed to be in need of a guardian or conservator solely because the adult has been found to be in need of treatment or services for drug or substance abuse, addiction or dependency or mental illness. Further,

> [p]atients with dementia, delirium, schizophrenia, bipolar affective disorder, and other psychiatric conditions may be capable of making responsible decisions. Establishing that a patient lacks decisional capacity requires more than making a psychiatric diagnosis; it also requires demonstrating that the specific symptoms of that disorder interfere with making or communicating responsible decisions about the matter at hand.

Robert P. Roca, *Determining Decisional Capacity: A Medical Perspective*, 62 Fordham L. Rev. 1177, 1187 (1994).

Although the testimony of the psychiatrist who examined the proposed ward did support the petitioners' statements regarding a prior history of bipolar disorder and schizophrenia and substance abuse as well as a need for treatment, there was no testimony regarding the proposed ward's current decision-making capacity. Thus, the probate court did not abuse its discretion in denying petitioner's motion for reconsideration. See generally *Stephens v. Alan V. Mock Constr. Co.*, 302 Ga. App. 280, 281 (1) (690 SE2d 225) (2010) (trial court's decision granting or denying motion for reconsideration will be upheld absent an abuse of discretion).

For the foregoing reasons, I would affirm the order of the probate court dismissing the petition for a conservator and for guardianship. Therefore, I respectfully dissent.

I am authorized to state that Presiding Judge Barnes joins in this dissent.

12