**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 7, 2014**

# In the Court of Appeals of Georgia

A14A0672. IN RE: ESTATE OF JAMES IRWIN KAUFMANN.      DO-035

DOYLE, Presiding Judge.

This appeal arises from a Petition for Restoration filed by ward James Irwin Kaufmann, in which he petitioned for a restoration of his rights or, alternatively, for the appointment of a new guardian and new conservator. Kaufmann argues that the probate court impermissibly disregarded the terms of a settlement agreement requiring appointment of a new guardian and new conservator by re-appointing the prior guardian. For the reasons that follow, we affirm.

The record reveals that Kaufmann suffered from physical and mental disabilities due to stroke, multiple seizures, or transient ischemic attacks, as well as dementia. In August 2011, due to Kaufmann's condition, the probate court made an emergency appointment of a guardian and conservator for Kaufmann — his adult son,

Rocco Kaufmann ("Rocco"); shortly thereafter, Rocco, acting as conservator, removed Kaufmann and installed himself as president of Kaufmann's real estate business.[1] Thereafter, in October 2011, the probate court appointed Rocco as Kaufmann's guardian, but instead of maintaining Rocco as the conservator, appointed Jerry L. Landers, Jr.

In November 2012, Kaufmann filed a Petition for Restoration of [a]n Individual Formerly Found in Need of a Guardian and/or Conservator in which he requested restoration of his rights or, alternatively, appointment of a new guardian and new conservator. The probate court held a probable cause hearing, after which the Court determined that probable cause existed to support a finding that Kaufmann was no longer in need of a guardian or conservator.

Thereafter, a hearing on the petition was begun but not completed on July 17, 2013, and after mediation, Kaufmann, Rocco, and Landers entered into a settlement agreement, which was submitted and entered as an order by the probate court. The consent order memorializing the settlement agreement stated that the petition would be dismissed and governed by OCGA § 29-5-71 (e), which states that "[n]o petition for modification shall be allowed by the court within two years after the denial or

---

[1] Prior to that time, Rocco had been vice president of the company.

dismissal on the merits of a petition for substantially the same modification unless the petitioner shows a significant change in the condition or circumstances of the ward." Additionally, the parties agreed that Rocco would resign as guardian, and Landers, who was serving as conservator, also would resign, and the parties would submit to the guardian ad litem ("GAL") up to three names each as candidates for the substitute guardian and conservator. The GAL could add more names and distribute the completed list to the parties for comment, and then the GAL would make a selection and recommendation for the new guardian and conservator by a date certain. The parties agreed that they would not object to the court's selection of the new guardian and new conservator.

At the continued petition hearing on July 23, 2013, the parties presented the probate court with a copy of the consent order. At the hearing, the probate court stated

> So, I don't want to abdicate what I have sworn to do, so I just want to make sure, as I understand this, before I sign this order that we're all on the same page and that at the end of the day if I see all of the selections as an issue I would intend to say I'm going off this list but I need to know if there are reservations about this other person — and I have no idea what potential cast of characters we're looking at. But, that being said, I may solicit any feedback which may feel like objections, and we

3

may end up getting to that point. But, before I sign this I want to make sure we all have an understanding that that is a potential, given what you've got here and if I'm allowed to go off this list[,] and I need to know if there are any concerns and if there are concerns, I need to hear those concerns. I know that the objective is to avoid that[,] and I believe in that — I buy into that. But, being asked to do it without knowing who the list is and all of that, I'm kind of wanting to manage expectations on the back of this. . . . I just had visions of everybody showing up, you giving me a list of people that for whatever reason didn't seem like the best choice and me saying no to all of those and everybody saying — no, you said in your order — that's why I asked you all to be here today so that we could have this conversation and that I could understand how this impacted and streamlined everything[,] and so everybody could understand things that I felt duty-bound to do and statutorily required [to do.]

Thereafter, Kaufmann submitted the names of two potential guardians to the GAL, and Rocco submitted one individual (his younger brother, Jamie Kaufmann) and adult protective services.[2] The GAL prepared a report, recommending that the probate court select adult protective services as Kaufmann's new guardian because (1) the individuals selected by Kaufmann "expressed . . . that he does not really need a guardian," which the GAL believed would lead them to abandon their role as

---

[2] The parties also submitted the names of replacement conservators, but the probate court's appointment of the new conservator is not at issue.

4

guardian if so appointed in favor of pleasing Kaufmann; and (2) appointing Jamie as guardian would deteriorate the family relationships further, which would not be beneficial for Kaufmann's mental well-being.

After reviewing the GAL's report and recommendation for a new guardian and conservator, the probate court entered an order appointing a new conservator, but based on the GAL's report, the record, and the applicable law, the probate court ordered Rocco to remain guardian of Kaufmann "as it is in the best interest of the ward."[3]

In a single enumeration of error, Kaufmann contends that the probate court erred by modifying the terms of the settlement agreement and consent order by reappointing Rocco as his guardian and failing to appoint a different guardian.[4] In support, he cites to cases regarding civil settlement agreements. Nevertheless, pursuant to OCGA § 29-4-3 (a),

---

[3] Kaufmann filed a motion for reconsideration of the order, but the motion was not ruled on prior to entry of the notice of appeal. See *McLeod v. Clements*, 306 Ga. App. 355, 357 (2) (702 SE2d 638) (2010) ("A notice of appeal divests the trial court of jurisdiction to supplement, amend, alter, or modify the judgment while the appeal of that judgment remains pending.").

[4] Kaufmann does not argue that the probate court should have reopened his petition for restoration as a result of its determination that it was in his best interest to have Rocco remain his guardian. Therefore, we do not reach this issue.

5

[t]he court shall appoint as guardian that individual who will best serve the interest of the adult, considering the order of preferences set forth in this Code section. The court may disregard an individual who has preference and appoint an individual who has a lower preference or no preference; provided, however, that the court may disregard the preferences listed in paragraph (1) of subsection (b) of this Code section only upon good cause shown.[5]

As the probate court explained to the parties *prior* to entering the consent order, which the parties acknowledged at the hearing, the trial court had certain statutory requirements that would trump the selections of the parties and recommendation of the GAL. This is further supported by the Guardianship Code with regard to accepting the resignation of current guardians. OCGA § 29-4-50 (a)

---

[5] The preferences listed in OCGA § 29-4-3 (b) are "(1) The individual last nominated by the adult in accordance with the provisions of subsection (c) of this Code section; (2) The spouse of the adult or an individual nominated by the adult's spouse in accordance with the provisions of subsection (d) of this Code section; (3) An adult child of the adult or an individual nominated by an adult child of the adult in accordance with the provisions of subsection (d) of this Code section; (4) A parent of the adult or an individual nominated by a parent of the adult in accordance with the provisions of subsection (d) of this Code section; (5) A guardian appointed during the minority of the adult; (6) A guardian previously appointed in Georgia or another state; (7) A friend, relative, or any other individual; (8) Any other person, including a volunteer to the court, found suitable and appropriate who is willing to accept the appointment; and (9) The county guardian."

requires the probate court to satisfy itself of certain criteria prior to accepting the guardian's petition for resignation.[6]

In this case, the reasoning found in the GAL's report supports the probate court's refusal to place any of the three named replacements to act as Kaufmann's new guardian. Furthermore, the trial court found that it was in the best interest of Kaufmann to have Rocco continue as his guardian rather than replace Rocco with adult protective services, a finding that is supported by the statutory preferences in OCGA § 29-4-3 (b). Accordingly, we discern no basis for reversal.

*Judgment affirmed. Miller and Dillard, JJ., concur.*

---

[6] See also *Bryce v. Wynn*, 50 Ga. 332, 334 (2) (1873).