**SECOND DIVISION
RICKMAN, C. J.,
MILLER, P. J., PIPKIN, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 2, 2023**

# In the Court of Appeals of Georgia

A22A1713. IN RE ESTATE OF JENKINS.

MILLER, Presiding Judge.

This case involves a family dispute over the appointment of a conservatorship for Gary Allen Jenkins, a retiree who currently lives in an assisted living facility due to his severe memory and mental health problems. Kimberly Sue Jenkins, the wife of Mr. Jenkins, appeals from the trial court's order appointing Mr. Jenkins' son Wesley Jenkins as his legal guardian. On appeal, Mrs. Jenkins argues that (1) the trial court erred when it found that there was good cause to disregard Mrs. Jenkins' statutory priority to be appointed guardian over Mr. Jenkins under OCGA § 29-4-3; and (2) the trial court erred by failing to state the basis for its selection of Wesley as guardian, in violation of OCGA § 29-4-13. A review of the record shows that the trial court did not abuse its discretion by refusing to appoint Mrs. Jenkins as Mr. Jenkins' guardian

and that it adequately explained and supported its decision to do so. Nevertheless, we must vacate the trial court's order and remand for further proceedings because it did not identify any basis or support for its appointment of Wesley as Mr. Jenkins' guardian.

This Court reviews a trial court's order appointing a guardian over a conservatorship under an abuse of discretion standard. *In re Estate of Taylor*, 270 Ga. App. 807 (608 SE2d 299) (2004). We will not set aside a probate court's findings "unless they are clearly erroneous and when such findings are supported by any evidence, they will be upheld on appeal." (Citation omitted.) *In the Interest of M. P.*, 338 Ga. App. 696, 697 (791 SE2d 592) (2016). "The probate court's application of the law, however, is subject to de novo review." (Citation omitted.) Id. at 697-698.

The record shows that Mr. Jenkins has three adult sons, including Wesley, from a relationship prior to his marriage to Mrs. Jenkins. Mr. Jenkins has a long history of alcohol consumption, and a psychiatric evaluation noted that he regularly spent up to $2,500 per month on alcohol. Mr. Jenkins and Mrs. Jenkins married in 2008, and according to Wesley, that is when Mr. Jenkins "transitioned from drinking beer to brown liquor." Wesley testified that alcohol was a "constant . . . presen[ce]" in the house, that "[t]here was never a moment that [he] walked into [their] house and there

2

wasn't alcohol," and that Mrs. Jenkins would often restock the house's bar before she left on vacation or visited others. Wesley further testified that Mrs. Jenkins was "no less of a[n] alcohol lover than [his] dad," and that the couple regularly engaged in a toxic cycle of drinking and arguing.

According to Mrs. Jenkins, Mr. Jenkins' drinking problem "started getting heavy" after he retired and was diagnosed with lip cancer. After one incident in March 2021, Mrs. Jenkins and one of Mr. Jenkins' sons took him to the emergency room, where the doctors discovered that Mr. Jenkins' liver was shutting down. The doctors admitted Mr. Jenkins to the hospital for ten days to detox. After Mr. Jenkins completed his ten-day detox, Mrs. Jenkins attempted to arrange additional rehab treatment, but Mr. Jenkins refused to attend.

A few months after that incident, Mr. Jenkins was arrested at a restaurant for impersonating a police officer. A Douglas County court ordered Mr. Jenkins to undergo further rehab and to either spend a year in a treatment facility or a year in jail. Because Mr. Jenkins' mental capacity did not qualify him for a rehab facility, Mrs. Jenkins arranged for him to be housed in a memory care facility. Mr. Jenkins was eventually diagnosed with dementia and alcohol-induced brain damage, also known as Wernicke-Korsakoff Syndrome. His mental capacity is not expected to

improve, and his medical providers have advised that he will need to stay in a similar facility for the remainder of his life.

In December 2021, Mrs. Jenkins filed the instant petition to appoint herself guardian and/or conservator over Mr. Jenkins. Mrs. Jenkins submitted to the trial court an Advance Directive form that Mr. Jenkins signed in 2016 wherein he selected Mrs. Jenkins as his Health Care Agent, the person he authorized to make health care decisions on his behalf. The form also indicated that Mr. Jenkins selected his son Clint Jenkins as his back-up Health Care Agent. The trial court appointed a social worker to evaluate Mr. Jenkins, and the social worker concluded that Mr. Jenkins lacked sufficient capacity to make significant responsible decisions for himself and will require extensive care and assistance for the remainder of his life. Wesley filed a caveat to the petition, arguing that Mrs. Jenkins should not be appointed the guardian because she enabled Mr. Jenkins' drinking habits that caused his medical situation.

Following a hearing that spanned two days, the trial court entered a final order establishing a conservatorship for Mr. Jenkins and appointing Mrs. Jenkins as the conservator and Wesley as Mr. Jenkins' guardian, concluding that doing so was "in the Proposed Ward's best interest." In its order, the trial court concluded that good

cause was shown to refuse to appoint Mrs. Jenkins as guardian because there was evidence that she "lacks the ability to make or communicate significant responsible decisions concerning the Proposed Ward's health or safety." Mrs. Jenkins then filed the instant appeal.

1. Mrs. Jenkins first argues that the trial court abused its discretion when it found good cause to disregard her statutory priority to be appointed guardian over Mr. Jenkins. We conclude that the trial court properly exercised its discretion.

Georgia law provides that

[t]he court shall appoint as guardian that individual who will best serve the interest of the adult, considering the order of preferences set forth in this Code section. The court may disregard an individual who has preference and appoint an individual who has a lower preference or no preference; provided, however, that the court may disregard the preferences listed in paragraph (1) of subsection (b) of this Code section only upon good cause shown.

OCGA § 29-4-3 (a). Paragraph (1) of subsection (b) provides that the person with the highest preference is the "individual last nominated by the [ward]" in writing. Paragraphs (2) and (3) provide that the spouse shall have next priority, then an adult child of the ward. OCGA §§ 29-4-3 (b) (2)-(3).

Here, we conclude that the trial court did not abuse its discretion by finding good cause to disregard both Mr. Jenkins' nomination of Mrs. Jenkins as his desired guardian and her statutory priority as his spouse. The record indicates that Mr. Jenkins suffers from dementia and encephalopathy that were caused by his long history of alcoholism. The trial court found there was good cause to refuse to consider Mrs. Jenkins as Mr. Jenkins' guardian because there was evidence that she was incapable of handling Mr. Jenkins' health and that she would continue to aid or enable Mr. Jenkins' alcoholism. This finding is supported by the record, as there is evidence that Mrs. Jenkins helped to enable Mr. Jenkins' alcohol habits and that, after Mr. Jenkins' behavior became extreme, Mrs. Jenkins was unable to handle and care for him on her own without Mr. Jenkins' sons' assistance. Although the record contains numerous conflicting points of testimony regarding Mrs. Jenkins' capabilities, the trial court was entitled to credit the testimony casting doubt on Mrs. Jenkins' ability to properly care for Mr. Jenkins. See *In re Cash*, 298 Ga. App. 110, 112 (679 SE2d 124) (2009) ("As an appellate court, we are not at liberty to evaluate either the weight afforded the evidence below or the trial court's credibility determinations.") (citation omitted). Because there is evidence in the record to support the trial court's finding that appointing Mrs. Jenkins as guardian would not

6

be in Mr. Jenkins' best interest, the trial court did not abuse its discretion by passing over Mrs. Jenkins when it appointed a legal guardian for Mr. Jenkins. See *In re Holloway*, 251 Ga. App. 892, 894 (555 SE2d 228) (2001) (under the prior, materially identical version of OCGA § 29-4-3, evidence supported the trial court's determination that good cause was shown to refuse to appoint the ward's children as guardians when their actions called into question whether they could act in the ward's best interests); see also *In re Estate of Kaufmann*, 327 Ga. App. 900, 902-903 (761 SE2d 418) (2014) (good cause shown under OCGA § 29-4-3 (b) to disregard the ward's preferred guardians when the trial court concluded that two of the proposed guardians would probably abandon their role and that appointing the other proposed guardian would have deteriorated the family's relationships to the detriment of the ward).

2. Mrs. Jenkins further argues that the trial court erred by appointing Wesley as the guardian without stating the basis for the selection, in violation of OCGA § 29-4-13 (a) (1), and by overruling her priority statutory preferences without stating the factual basis for doing so. Specifically, Mrs. Jenkins appears to argue that the trial court failed to support its decision with a finding that appointing Wesley was in the best interest of Mr. Jenkins and that the trial court's fact findings regarding her

unsuitability were not found in the evidentiary record but were found only in Wesley's caveat. While we conclude that the trial court adequately explained its decision to refuse to appoint Mrs. Jenkins and supported that decision with facts in the record, we agree with Mrs. Jenkins that the trial court did not provide factual findings to support its appointment of Wesley as Mr. Jenkins' guardian.

Georgia law provides that, when appointing a conservator or legal guardianship, "[t]he court shall issue an order that sets forth the findings of fact and conclusions of law that support the grant or denial of the petition. An order granting guardianship shall specify [t]he name of the guardian and the basis for the selection[.]" OCGA § 29-4-13 (a) (1).

In its order, the trial court clearly stated that it found good cause to refuse to appoint Mrs. Jenkins as the guardian for Mr. Jenkins because it concluded that she "lack[ed] the ability to make or communicate significant responsible decisions concerning the Proposed Ward's health or safety." The trial court supported its conclusion with multiple facts from the record showing that Mrs. Jenkins may have lacked the capacity to handle and help treat Mr. Jenkins' alcoholism, namely that (1) Mrs. Jenkins testified that Mr. Jenkins spent $2500 in alcohol monthly; (2) Mrs. Jenkins testified that Mr. Jenkins earned that money and should be able to spend it

as he wishes; (3) when questioned whether she would restrict Mr. Jenkins' use of money for alcohol purchases as conservator, Mrs. Jenkins stated that she would "continue to pay the bills like she has been doing;" and (4) Mrs. Jenkins testified that she sought assistance from Mr. Jenkins' sons regarding his care and safety. These facts could all be read to support a conclusion that Mrs. Jenkins had an intention to continue to fund Mr. Jenkins' purchases of alcohol and/or that she did not have the capacity to handle Mr. Jenkins' care herself. Thus, the trial court clearly set out the basis for its decision to refuse to appoint her as Mr. Jenkins' guardian and adequately supported its decision with facts in the record.

Nevertheless, while the trial court sufficiently explained its decision to refuse to appoint Mrs. Jenkins, we agree with Mrs. Jenkins that the order does not contain any findings or conclusions as to *Wesley's* suitability to act as Mr. Jenkins' guardian. While the trial court stated its conclusion that he is the person who would best serve the interest of Mr. Jenkins under OCGA § 29-4-3 (a), that statement by itself is insufficient to set out the basis for Wesley's appointment, and the order does not contain any supporting factual findings or any explanation for that conclusion. Cf. *Fladger v. Fladger*, 296 Ga. 145, 148 (2) (765 SE2d 354) (2014) (trial court's mere assertion in a divorce decree that the "best interest of the children will be served" by

a child support deviation was insufficient because it failed to explain how the best interest of the child would be served by such a deviation); *Ray v. Hann*, 323 Ga. App. 45, 50 (2) (746 SE2d 600) (2013) (trial court's mere assertion that adoption was in the child's best interest "lack[ed] particularity," and vacatur was warranted for further specific findings of fact to support that conclusion). Therefore, as the trial court failed to set forth findings of fact to establish the basis of its selection of Wesley as Mr. Jenkins' guardian, see OCGA § 29-4-13 (a) (1), we must vacate the trial court's order to the extent it appointed Wesley as Mr. Jenkins' guardian and remand this case with direction that the trial court prepare appropriate findings of fact to support its decision. We affirm the remainder of the trial court's order.

*Judgment affirmed in part, vacated in part, and case remanded. Rickman, C. J., and Pipkin, J., concur.*